(No. 75558.—

RICHARD PEILE *et al.*, Appellees, v. SKELGAS, INC., *et al.*, Appellants.

*Opinion filed December 22, 1994.*

HARRISON, J., dissenting.

Robert W. Wilson and Adrian P. Sulser, of Evans & Dixon, of Edwardsville, for appellants Skelgas, Inc. and Skelgas Group, Inc.

Ian P. Cooper and Robert L. Jackstadt, of Peper, Martin, Jensen, Maichel & Hetlage, of St. Louis, Missouri, for appellants Phillips Petroleum Co., Phillips 66 Co. and Phillips Pipe Line Co.

Bruce D. Ryder and James M. Cox, of Coburn & Croft, of St. Louis, Missouri, for appellant Shell Oil Co.

Sandor Korein and Michael B. Marker, of Carr, Ko-

rein, Tillery, Kunin, Montroy & Glass, of East St. Louis, for appellees.

JUSTICE McMORROW delivered the opinion of the court:

This interlocutory appeal arises from the denial of defendants' motion, based on *forum non conveniens*, to transfer plaintiffs' personal injury lawsuit from St. Clair County to Pike County. The appellate court, *sua sponte*, certified an issue of importance: Should the doctrine of intrastate *forum non conveniens*, adopted by this court in *Torres v. Walsh* (1983), 98 Ill. 2d 338, be abrogated? The appellate court determined that the doctrine of intrastate *forum non conveniens* should be repudiated because it is contrary to the legislative intent of one of the venue provisions in the Code of Civil Procedure (735 ILCS 5/2—108 (West 1992)). The appellate court also held, with respect to the merits of the *forum non conveniens* motion under review, that the circuit court did not abuse its discretion in denying the motion to transfer the cause to Pike County. 242 Ill. App. 3d 500.

## BACKGROUND

In October 1987, Richard Peile was seriously injured in an explosion and fire at his home that occurred as he attempted to light the pilot light on a gas furnace in his basement. Hours before the explosion, an employee of Skelgas, Inc., had delivered to the Peiles 500 gallons of liquid petroleum, commonly called propane, from the Skelgas facility in Pike County. The Peiles' home also was located in Pike County. Richard Peile and his wife, Agnes, thereafter filed suit in Madison County, alleging, *inter alia*, the existence of design defects in the furnace that had exploded. Three defendants were joined in this suit: Skelgas, Inc., a retail distributor of propane gas; York International Corporation, the manufacturer of the furnace that exploded, and Honeywell, Inc., the

manufacturer of a control valve on the furnace. Defendants moved for transfer of venue, based on *forum non conveniens*, from Madison County to Pike County, the site of the accident. Plaintiffs opposed the motion, arguing that Skelgas maintained a home office in Madison County. However, the Madison County court granted the motion. Plaintiffs did not appeal this ruling.

While the lawsuit was pending in Pike County, the parties took discovery. Plaintiffs amended their complaint to add additional defendants and theories of negligence. The amended complaint joined, as defendants, the following parties: Phillips Petroleum Company, Phillips 66 Company, Phillips Pipe Line Company, Shell Oil Company, and Skelgas Group, Inc. The additional allegations included defendants' allegedly improper or inadequate odorization of the propane gas sold to plaintiffs, and defendants' failure to warn of the dangers associated with the use of propane. An odorant is added to propane, an odorless gas, to alert people to potential danger in the event of a gas leak. The additional defendants joined in plaintiffs' amended complaint were all alleged to be suppliers or sellers of the propane gas in use at the time of the explosion and fire leading to plaintiffs' injuries.

Plaintiffs voluntarily dismissed their Pike County lawsuit in April 1990, although the case had been set for trial as number one on the docket for July 9, 1990. In December 1990, plaintiffs refiled their action in St. Clair County, approximately 100 miles from Pike County. The refiled action renamed as defendants Skelgas, Inc., from the original complaint, plus the same parties who had been added to the suit while it was pending in Pike County. The refiled action did not name York, the furnace manufacturer, or Honeywell, the furnace valve manufacturer. The allegations of the complaint refiled in St. Clair County were similar to those

of the amended complaint that had been pending in Pike County.

The complaint refiled in St. Clair County alleges that the propane sold by the Phillips defendants, the Skelgas defendants, and Shell Oil was defective and unreasonably dangerous in that it was not adequately odorized. According to the complaint, two of the defendants, Shell Oil and Phillips Pipe Line, maintained wholesale, bulk distribution facilities from which Skelgas obtained the gas that was eventually delivered to plaintiffs at their home in Pike County. Shell's facility is located in Madison County and Phillips' facility is located in St. Clair County. Plaintiffs contend that gas which was stored at the St. Clair facility and delivered to plaintiffs was not properly or adequately odorized and tested by employees of Phillips and Skelgas. Plaintiffs charge that Skelgas employees failed to exercise adequate care with respect to the delivery of gas to plaintiffs' home, failed to properly inspect the gas appliances in plaintiffs' home following the delivery and installation of the propane gas, and failed to relight the pilot in the furnace, which proximately caused the explosion and fire that injured plaintiffs. Plaintiffs further allege that all defendants failed to provide proper warnings to plaintiffs regarding the dangerous properties of propane gas.

Defendants moved to transfer the refiled suit from St. Clair County back to Pike County, where the case had been pending for almost two years. The motion was denied. In its order of December 20, 1991, the court held:

"Since Defendants Phillips et al and Shell were not parties to the suit pending in Madison County at the time it was transferred by that court, but are parties in the cause pending before this court, and since there are allegations of negligence that occurred against all the Defendants, with the exception of Shell Oil, in St. Clair County, Illinois, this Court finds that St. Clair has a substantial interest in this cause.

Since the site of the negligence alleged to have occurred in St. Clair County may be a site necessary for view by the jury if requested by the parties, and the home where the negligence occurred in Pike County is no longer present and available for view, the Court finds that to be additional factors that it weighs in its Order.

The Court further takes judicial notice of its own docket, and in this county when cases are filed, they are assigned to individual Judges who then handle the case pending its disposition. Knowing the status of this Court's own docket, there is no backlog in this Court that would prevent this case going to trial in an expeditious manner, and in fact, this case could be set for trial within four (4) months of the time the parties announce this cause is ready."

The appellate court affirmed the circuit court's ruling, holding that the circuit court did not abuse its discretion in denying defendants' motion to transfer the action back to Pike County. In addition to that ruling, which addressed the arguments of the parties, the appellate court considered a question of first impression, not presented by the parties: Does section 2—108 of the Code of Civil Procedure, a venue statute, abrogate this court's authority to recognize and apply the common law doctrine of *forum non conveniens*? The appellate court answered this question in the affirmative, stating that section 2—108 requires that cases shall be tried *where filed*, except when a specific *statute* provides otherwise. The appellate court reasoned that because none of the venue statutes refer to *forum non conveniens* as a ground for transfer of venue, the court in *Torres v. Walsh* (1983), 98 Ill. 2d 338, lacked authority to recognize intrastate application of the doctrine and should reverse its acceptance or recognition of intrastate transfer based on *forum non conveniens*. Having reached this conclusion, the appellate court certified the appeal to this court, pursuant to Supreme Court Rule 316 (134 Ill. 2d R. 316).

## ANALYSIS

### I

We first consider the appellate court's invitation to overrule *Torres v. Walsh* and abandon the jurisprudence of intrastate *forum non conveniens*. In *Torres*, this court acknowledged that the Illinois legislature had not enacted a *forum non conveniens* statute. However, *Torres* held that the Illinois courts' authority to transfer cases under the doctrine of *forum non conveniens* "exists at common law, and, therefore, statutory authorization is unnecessary as it only recognizes and codifies a right that previously existed at common law." (*Torres*, 98 Ill. 2d at 347.) The *Torres* court further observed that the United States Supreme Court had recognized the Federal courts' "inherent authority" to dismiss a suit pursuant to the doctrine of *forum non conveniens*, noting that the doctrine " 'is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute.' " (*Torres*, 98 Ill. 2d at 345, quoting *Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 507-09, 91 L. Ed. 1055, 1062, 67 S. Ct. 839, 842-43.) After reviewing the English common law roots of the *forum non conveniens* doctrine, the *Torres* court reasoned that, in Illinois, intrastate application of the doctrine should be treated as analogous to the long-recognized interstate application of *forum non conveniens*. Hence, a court having jurisdiction and venue over a case may dismiss or transfer the case if it "has no practical connection to the forum." (*Torres*, 98 Ill. 2d at 348, citing, *e.g., People ex rel. Compagnie Nationale Air France v. Giliberto* (1978), 74 Ill. 2d 90; *Adkins v. Chicago, Rock Island & Pacific R.R. Co.* (1973), 54 Ill. 2d 511.) The *Torres* court concluded that if the doctrine of *forum non conveniens* permits transfer of a case from a city in Illinois to a nearby city in another State then the doctrine should be available

to transfer a case from one city in Illinois to another nearby city in Illinois under the same theory. *Torres*, 98 Ill. 2d at 350.

In the case at bar, the appellate court noted that *Torres* did not address the meaning and effect of section 2—108 of the Code of Civil Procedure, the predecessor of which was enacted almost two centuries ago, when Illinois was a territory. With minor variations in wording, the current statute is the same as its original incarnation. That section provides:

> "All actions shall be tried in the county in which they are commenced, except as otherwise provided by law." 735 ILCS 5/2—108 (West 1992).

According to the appellate court, the doctrine adopted in *Torres* offends section 2—108 because it infringes on the legislative prerogative to establish the rules of venue by statute. In support of its conclusion, the appellate court construed the phrase "except as otherwise provided by law," the last words appearing in section 2—108, as being limited to "express statutory enactment." Because there is no Illinois statute embodying *forum non conveniens*, the appellate court posits that section 2—108 affirmatively precludes the courts from granting intrastate *forum non conveniens* motions to transfer cases from the venue in which the suit is initiated to another locale. The appellate court concluded that this court's recognition of the intrastate *forum non conveniens* doctrine in *Torres* grafted a judicial exception onto the legislative scheme of venue.

Defendants challenge the appellate court's reasoning, arguing that *forum non conveniens* is not a rule of venue but rather is an aspect of the long-recognized authority of the courts to decline jurisdiction over an action, even in those cases where the jurisdictional and venue requirements are met, if a forum with stronger ties to the litigation is available and justice would be better served. (See, *e.g.*, *Gulf Oil Corp. v. Gilbert* (1947),

330 U.S. 501, 91 L. Ed. 1055, 67 S. Ct. 839; *Adkins v. Chicago, Rock Island & Pacific R.R. Co.* (1973), 54 Ill. 2d 511; *Torres v. Walsh*, 98 Ill. 2d 338.) Defendants further argue that the appellate court's construction of the phrase "except as otherwise provided by law" undermines the rulemaking authority granted to this court by the Constitution of 1970. Ill. Const. 1970, art. VI, § 1.

We reject the appellate court's construction of section 2—108 and its analysis of legislative intent. It is true that in adopting the intrastate *forum non conveniens* doctrine in *Torres*, this court was not presented with an issue concerning the meaning or application of section 2—108. Nonetheless, the opinion in *Torres* clearly reflects the common law basis for the doctrine and its roots in the inherent power of the courts to decline jurisdiction where a different forum is found to be significantly more convenient and the interests of justice require transfer.

Prior to the decision in *Torres*, this court cited *forum non conveniens* principles in holding that cases pending in different circuits within the State could be consolidated, notwithstanding the lack of express statutory authorization. (*Horn v. Rincker* (1981), 84 Ill. 2d 139.) In *Horn*, this court denied the petitioners' request for issuance of a writ of *mandamus* to compel a circuit court to consolidate cases pending in different circuit courts, observing that the statutory power of the circuit courts was limited to consolidation of cases pending "in the same court." However, the *Horn* court determined that the principles underlying *forum non conveniens* supported the exercise of this court's constitutionally derived supervisory and administrative powers to effect such transfers and consolidations. *Horn*, 84 Ill. 2d at 149.

The underlying rationale of this court's decisions in *Horn* and *Torres* remains as effective today as when

decided. Subsequent decisions have reiterated that *forum non conveniens* is founded in considerations of fundamental fairness and sensible and effective judicial administration. (*E.g., Vinson v. Allstate* (1991), 144 Ill. 2d 306, 310.) Since the decision in *Torres*, this court has continued to characterize the intrastate application of the doctrine as rooted in the court's discretionary power to dismiss a case within its jurisdiction when a more appropriate forum is available. See, *e.g., Cook v. General Electric Co.* (1992), 146 Ill. 2d 548, 556; *Washington v. Illinois Power Co.* (1991), 144 Ill. 2d 395, 399.

The venue statutes enable plaintiffs to determine where to commence their lawsuits and the conditions under which defendants may obtain a transfer based on improper venue. In general, venue is proper in "the county of residence of any defendant who is joined in good faith" or "the county in which the transaction or some part thereof occurred out of which the cause of action arose." (735 ILCS 5/2—101 (West 1992).) A defendant may timely move to transfer the cause if initial venue does not comport with these provisions. A defendant's failure to preserve the objection to improper venue results in waiver, which does not render the judgment or order void on grounds of improper venue. (735 ILCS 5/2—104 (West 1992); see also 735 ILCS 5/2—105 through 2—107 (West 1992).) No other statutory grounds for transfer of venue are given. Section 2—108 provides for cases to be tried where commenced, "except as otherwise provided by law." 735 ILCS 5/2—108 (West 1992).

The appellate court erroneously concluded that section 2—108 is an exclusive reservation of legislative authority to prescribe where cases may be tried within Illinois. We reject as overly narrow the appellate court's construction of the phrase "except as otherwise provided by law." By holding that the term "law" in section

2—108 is restricted to statutory enactments, the appellate court fails to recognize the constitutionally derived authority of this court to enact rules in furtherance of its supervisory and administrative powers. Following the decision in *Torres*, this court enacted Supreme Court Rule 187, which regulates proceedings brought pursuant to the doctrine of *forum non conveniens*. (See 134 Ill. 2d R. 187(c).) Rule 306(a)(2) provides for interlocutory appeals by permission from orders granting and denying motions for *forum non conveniens*. (134 Ill. 2d R. 306(a)(2).) Under the appellate court's construction of section 2—108, these supreme court rules would be nullified as lacking the force of law because they are not legislative enactments pertaining to venue. Such an analysis undermines and overlooks the supervisory and administrative powers of this court embodied in our constitution. See Ill. Const. 1970, art. VI, § 1.

This court has stated, "The Illinois Constitution clearly empowers this court to promulgate procedural rules to facilitate the judiciary in the discharge of its constitutional duties." (*O'Connell v. St. Francis Hospital* (1986), 112 Ill. 2d 273, 281.) Because the constitution also authorizes the legislature to enact procedural statutes, this court and the legislature may share concurrent authority to promulgate rules of procedure. (*O'Connell*, 112 Ill. 2d at 281.) Where possible, this court seeks to reconcile conflicts between procedural rules of the court and the procedural enactments of the legislature, but if a statute conflicts with a rule that involves a matter within the judicial authority, the statute must yield to the rule. *O'Connell*, 112 Ill. 2d at 281.

We hold that the venue provision of section 2—108 is not in conflict with the rules of this court concerning intrastate *forum non conveniens* motions. Nothing in section 2—108 prevents this court from exercising its constitutional authority to supervise the administration

of the court system in this State. We acknowledge the legislative prerogative to enact, repeal, and amend the venue statutes of this State. The legislature may choose to amend the Illinois venue provisions if changes in the existing statutes are deemed necessary or desirable. (See McAllen, *Deference to the Plaintiff in Forum Non Conveniens*, 13 So. Ill. U. L.J. 191, 256-57 (1989) (suggesting amendments to the Illinois statutes).) However, the role of this court in the instant appeal is to review the basis for and application of the existing doctrine of *forum non conveniens*. We decline to abandon the intrastate *forum non conveniens* doctrine based on the rationale advanced by the appellate court and plaintiffs in the case at bar.

We recognize that the specially concurring opinion of Justice Lewis in the case at bar reflects frustration with the "quagmire" created by intrastate application of the doctrine. The specially concurring justice emphasizes the "considerable amount of time" that appellate judges spend ruling on the time-consuming motion under Rule 306(a)(1)(ii) from a trial court order on the basis of *forum non conveniens*. (242 Ill. App. 3d 500, 521 (Lewis, J., specially concurring).) Justice Lewis aptly notes that "[t]he battle over the forum results in a battle over minutiae." (242 Ill. App. 3d at 522 (Lewis, J., specially concurring).) While we are not insensitive to such concerns, we are not persuaded that abandonment of the equitable doctrine of *forum non conveniens* is necessary because of perceived abuses in its invocation or time consumed in its resolution. The doctrine that was activated in *Torres* was designed to give the courts "discretionary power which should be exercised *only in exceptional circumstances* when it has been shown that the interests of justice require a trial in a more convenient forum." (Emphasis added.) (*Torres*, 98 Ill. 2d at 346, citing *Gulf Oil*, 330 U.S. 501, 91 L. Ed. 1055, 67 S. Ct. 839.) In most instances, the plaintiff's initial choice

of forum will prevail, provided venue is proper and the inconvenience factors attached to such forum do not greatly outweigh the plaintiff's substantial right to try the case in the chosen forum. If, however, the litigation has no practical connection to the forum, and a defendant establishes the necessary showing under the doctrine, the court should grant the motion for transfer. We conclude that the *forum non conveniens* doctrine continues to serve a valuable policy that the courts of this State are sufficiently equipped to effectuate. Accordingly, we decline the invitation to abandon intrastate transfer of cases when appropriate, under the principles enunciated in *Torres v. Walsh*.

## II

The second issue for our determination is whether the circuit court in the case at bar abused its discretion in denying defendants' motion for transfer based on the relevant private and public interest factors that form the traditional analysis of *forum non conveniens*. On this issue, defendants argue that the circuit and appellate courts disregarded crucial factors, did not properly weigh the factors that were considered, and mischaracterized facts in the record.

The doctrine of *forum non conveniens* presupposes the existence of more than one forum having jurisdiction and venue. (*E.g., Wieser v. Missouri Pacific R.R. Co.* (1983), 98 Ill. 2d 359, 364; *Vinson v. Allstate* (1991), 144 Ill. 2d 306, 311.) The trial court is vested with considerable discretion in its determination of whether transfer is warranted on the basis of *forum non conveniens* principles. The court's decision is subject to reversal only if the court abused its discretion. (*Griffith v. Mitsubishi Aircraft International, Inc.* (1990), 136 Ill. 2d 101, 106.) The doctrine of *forum non conveniens* is a flexible one which requires evaluation of the total circumstances rather than concentration on any single

factor. (See *Washington v. Illinois Power Co.* (1991), 144 Ill. 2d 395, 401, citing *Bland v. Norfolk & Western Ry. Co.* (1987), 116 Ill. 2d 217, 227.) Private interest factors to be considered may include the relative ease of access to sources of proof, the accessibility of witnesses, the possibility of a jury view of premises, if appropriate, " 'and all other practical problems that make trial of a case easy, expeditious and inexpensive.' " (*Washington*, 144 Ill. 2d at 399, quoting *Gulf Oil*, 330 U.S. at 508, 91 L. Ed. at 1062, 67 S. Ct. at 843.) Public interest considerations include having localized controversies being decided in the local forum, administrative concerns, including the congestion of court dockets, and the imposition of jury duty upon residents of a county with little connection to the litigation. *E.g., Griffith*, 136 Ill. 2d at 105-06.

This court has emphasized that "[a] further consideration under the *forum non conveniens* doctrine is deference to the plaintiff's choice of forum. A plaintiff's right to select the forum is a substantial one, and unless the factors weigh strongly in favor of transfer, 'the plaintiff's choice of forum should rarely be disturbed.' " (*Griffith*, 136 Ill. 2d at 106, quoting *Jones v. Searle Laboratories* (1982), 93 Ill. 2d 366, 372-73.) If a plaintiff files suit in the county of his or her residence, such forum is assumed to be convenient. (See *Brummett v. Wepfer Marine, Inc.* (1986), 111 Ill. 2d 495, 499, citing *Piper Aircraft Co. v. Reyno* (1981), 454 U.S. 235, 255-56, 70 L. Ed. 2d 419, 436, 102 S. Ct. 252, 266.) Under similar reasoning, plaintiff's choice of the county that is the situs of the accident or injury should be accorded deference, because in such an instance the litigation has the "aspect *** of a localized controversy," *i.e.*, being "decided at home." (*Brummett*, 111 Ill. 2d at 500, citing *Gulf Oil*, 330 U.S. at 509, 91 L. Ed. at 1063, 67 S. Ct. at 843.) This court has also held that plaintiff's choice of

forum is entitled to less deference where the situs of the injury is not located in the chosen forum (see *Brummett,* 111 Ill. 2d at 499) and the plaintiff is not a resident of the chosen forum (*e.g., Griffith,* 136 Ill. 2d at 106; *Washington,* 144 Ill. 2d at 400; *cf. Boner v. Peabody Coal Co.* (1991), 142 Ill. 2d 523 (plaintiff's choice is accorded considerable weight even when plaintiff is not a resident); see also *Cook v. General Electric Co.* (1992), 146 Ill. 2d 548, 560 (holding that despite the fact that the plaintiff resided in the forum in which he filed suit, the circuit court abused its discretion in denying the *forum non conveniens* motion to transfer because the alternative forum was the site of the accident, the place where plaintiff worked, and the most convenient forum for the witnesses)).

In the case at bar, the pertinent facts are as follows. The situs of the gas explosion and injury was plaintiffs' residence, located in Pike County. The medical and fire fighting personnel who arrived at the scene were also from Pike County. Richard Peile's physical therapist resides in Pike County. Two of his health care providers are from Springfield, in Sangamon County. Defendant Skelgas, which sold and delivered the propane to plaintiffs, maintains an office in Pike County. Skelgas employees, who live in Pike County, have been identified as witnesses with knowledge of matters relevant to the instant litigation. Pike County is the situs where Skelgas employees allegedly failed to perform a "sniff test" to determine whether the propane being delivered to the Peile home was odorized. No witnesses from St. Clair County were identified in the discovery process and, in fact, the manager of Phillips Pipe Line Company's wholesale and storage facility at the time of the accident has since retired from his position with the company and is living in another State. St. Clair County's sole connection to the litigation is that it is the location of

the facility that supplied a portion of the odorized propane to Skelgas, which stored the propane in a Skelgas storage facility in Pike County before the delivery to plaintiffs. According to the discovery conducted in the case, odorless propane from the pipeline was stored in Phillips Pipe Line's facility until sold at wholesale to retailers. By a fixed formula, the odorant was mechanically added to the propane during the loading process. The former manager of the facility testified in his deposition that the propane would not load without the odorant if the system was functioning normally. He also testified that the Phillips Pipe Line facility in St. Clair County was "unmanned" much of the time and that Phillips personnel did not odorize and load the propane onto the purchasers' trucks. Instead, the truck drivers, who were trained and certified by Phillips personnel, added the odorant as they loaded the propane for transport to retail facilities, such as the one operated by Skelgas in Pike County.

In addition to its implicit deference to plaintiffs' choice of forum, the circuit court cited three specific factors in support of its denial of defendants' *forum non conveniens* motion for transfer. First, the court noted that some of the alleged acts of negligence (*e.g.*, improper odorization of the gas) occurred in St. Clair County. Second, the circuit court determined that there may be a need for the jury to view the gas storage and odorization plant in St. Clair County, whereas no jury view of the accident site would be possible because the plaintiffs' home apparently was destroyed in the explosion and fire. Finally, the court took notice of its own docket and determined that there was no backlog of cases that would prevent the instant case from proceeding to trial expeditiously. We discuss these factors in order.

The circuit court found that St. Clair County had "a substantial interest" in the case because acts of alleged

negligence occurred in that county. The appellate court noted that the residents of St. Clair County had an interest in the safety of the propane gas stored and odorized in their county. The appellate court also stated that "many of the claims in this case center around the defendants' alleged acts and omissions occurring at the storage and odorization facility." (242 Ill. App. 3d at 511.) However, after reviewing the extensive discovery conducted in this case, as reflected by the lengthy record, we conclude that virtually none of the witnesses or other sources of proof are located in St. Clair County. The record reveals that propane stored at the Phillips Pipe Line facility in St. Clair County was loaded into trucks, with a preset amount of odorant, by Skelgas employees and transported to a Skelgas storage tank for further distribution to retail customers of Skelgas. Phillips Pipe Line Company personnel did not load or supervise the loading of propane and no St. Clair County witnesses have been identified as having knowledge of whether the propane in issue was loaded onto the Skelgas truck without proper odorization.

Bills of lading in the record indicate that a Skelgas driver picked up propane from the Phillips facility in St. Clair County and transported the gas to a Skelgas storage tank in Pike County. The Skelgas storage tank had a capacity of 30,000 gallons and the propane stored there was replenished as necessary by the addition of propane from the Phillips Pipe Line facility as well as from a facility operated by Shell Oil Company. From this storage tank the Skelgas driver on the day of the accident loaded propane onto his truck for retail deliveries, including the one to the Peiles' home. The Skelgas employee who delivered 500 gallons of propane to the Peiles' home testified in his deposition that he smelled the propane when he loaded it into his truck from the Skelgas storage tank. Apart from smelling the

gas, no testing procedures to measure the odorant level of a given load of propane were identified. It does not appear from the record that any individual did perform or was required to perform a "sniff test" at the St. Clair County facility.

As noted, the record indicates that no material occurrence witnesses or medical witnesses have been identified as residing in or near St. Clair County. In contrast, all of the witnesses having knowledge of the events leading to the gas explosion and its aftermath, specifically Skelgas employees, plaintiffs, and the fire and emergency medical personnel at the scene, are located in Pike County. The discovery material in the record indicates that at least eight witnesses whose testimony might be expected at trial, excluding plaintiffs, reside in Pike County. For these witnesses, attending a trial in the county of their residence appears to be much more convenient than travelling to a courthouse located 100 miles away. (See *Washington v. Illinois Power Co.* (1991), 144 Ill. 2d 395 (holding that defendants' motion for transfer to a more convenient county should have been granted even though the distance between the county seats of plaintiffs' chosen forum, Madison County, and the site of the accident, Bond County, was only 30 miles).) We cannot conclude from the record that the mere presence in St. Clair County of the propane odorization and wholesale distribution site creates a significant connection between St. Clair County and plaintiffs' lawsuit that would outweigh the presence of all key witnesses and sources of proof in Pike County.

The second factor relied upon by the circuit court in denying defendants' *forum non conveniens* motion was the possibility that the jury might visit the site of Phillips Pipe Line Company's facility in St. Clair County. Plaintiffs argue that such a visit may assist the jury

because the storage and wholesale facility in St. Clair County is where the odorant should have been added to the gas and tested. To the extent a view of the facility would aid the jury in understanding the mechanical odorizing process in effect at the time relevant to this litigation, this factor may lend support to the choice of St. Clair County. However, we believe the value of a jury view of the facility merits little weight in the overall analysis of the convenience of the respective forums. Defendants assert that no case has held that a jury's view of a site other than that involving the scene of the accident is a relevant factor in the *forum non conveniens* analysis. Instead, the reported cases involve the possibility of a jury's view of the location at which plaintiff's injuries were incurred. See *Cook*, 146 Ill. 2d at 559 (potential for jury view of the scene of the accident was a factor favoring the county in which collision of train and combine occurred); *Moore v. Chicago & North Western Transportation Co.* (1983), 99 Ill. 2d 73, 80 (possibility of jury view of the scene of accident cited as an important factor in *forum non conveniens* analysis).

The third factor cited by the St. Clair County circuit court in denying defendants' motion for transfer involved the relative congestion of the courts' dockets in the two counties under consideration. The judge in the case at bar stated that he could set a trial date within a few months of the time the parties announced their readiness for trial. The St. Clair County court's assessment of its own docket was reasonable and not demonstrably in error, although defendants argue that the docket in St. Clair County was more congested than that of Pike County. However, we do not view this factor as having great significance in the *forum non conveniens* analysis in this case. See *Brummett*, 111 Ill. 2d at 503 (stating that a challenge to the congestion of the chosen forum's docket is entitled to almost no weight

where the evidence does not show that the court's calendar in the other forum would resolve the dispute more expeditiously).

Considering the discovery materials adduced on the forum issue, we conclude that the balance of circumstances strongly favors the transfer of this case back to Pike County, where the case was pending and ready for trial at the time plaintiffs voluntarily dismissed their action to refile it in St. Clair County. We base our conclusion on such traditional convenience factors as the relative ease of access to the sources of proof, the significant distance that the Pike County witnesses would be required to travel if the trial were held in St. Clair County, the interest of Pike County, the site of the accident and residence of the injured parties, in having the controversy decided locally, and the lack of significant connection of St. Clair County to the litigation.

The circumstances of this case are similar to those in *Washington v. Illinois Power Co.* (1991), 144 Ill. 2d 395, where this court reversed the trial court's order denying the defendants' motion for transfer from Madison County to Bond County. In *Washington*, this court held that the trial court's denial of the requested transfer to Bond County was an abuse of discretion because Bond County had the greatest interest in the litigation, since the accident occurred in Bond County, the plaintiffs resided in that county, and all fact witnesses resided in Bond County. The *Washington* court stated, "[A]ny county to which [defendant] provides service has an interest in the outcome of the case, [but] the interest of none of these counties is greater than *** where the accident occurred." (Emphasis omitted.) (*Washington*, 144 Ill. 2d at 403.) Similarly, in the case at bar, the accident occurred in Pike County, plaintiffs reside in that county, and the material witnesses identified in extensive discovery proceedings

reside in Pike County. In addition, Pike County's interest in the outcome of the litigation is greater than that of St. Clair County.

In light of the diminished deference to be accorded a plaintiff's choice of forum when the selected forum is neither the site of the accident nor the residence of the plaintiff, and considering all relevant private and public interest considerations, we conclude that the balance of factors in the instant case strongly favors transfer of this case back to Pike County.

As a final observation, we note that plaintiffs' initial choice of forum was not St. Clair County but Madison County. Plaintiffs did not appeal from the order of the Madison County court transferring the case from Madison County to Pike County. We believe that the circuit court's deference to a plaintiff's choice of forum should be of lesser magnitude in the context of a refiled action, where the refiling occurs after the original court has ruled in favor of transfer to different forum. In the case at bar, plaintiffs voluntarily dismissed their action after its transfer to Pike County by the Madison County court. For almost two years, the parties undertook discovery in Pike County, during which time plaintiffs amended their complaint and added defendants, including Phillips Pipe Line Company. Nothing in the record suggests that the parties' ability to conduct discovery and engage in other pretrial matters was unduly hampered by proceeding in the circuit court of Pike County. Plaintiffs' lawsuit had been scheduled for trial at the time they voluntarily dismissed their amended complaint and refiled it in St. Clair County. In light of these circumstances, we believe that the circuit court of St. Clair County should have accorded lesser deference, in its *forum non conveniens* analysis, to what was plaintiffs' *second* choice of forum for trial, a forum selected almost two years after the case had been transferred to Pike County.

We reiterate and adhere to this court's past statements that the balance of factors must strongly favor the defendants' motion for *forum non conveniens* before a case should be transferred to a forum other than the one chosen by the plaintiff. We conclude that this is such a case. Therefore, we hold that the circuit court abused its discretion in denying defendants' motion for transfer.

For the foregoing reasons, we reverse the judgments of the appellate and circuit courts. We remand to the circuit court of St. Clair County with directions to transfer the cause to Pike County for trial.

> *Appellate court judgment reversed;*
> *circuit court judgment reversed;*
> *cause remanded with directions.*

JUSTICE HARRISON, dissenting:

Although the doctrine of *forum non conveniens* may make sense in the context of cases having connections with more than one State (see *Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 91 L. Ed. 1055, 67 S. Ct. 839), it can no longer be justified where, as here, the dispute concerns Illinois alone. The improvement of the highway system, the expansion of scheduled air service, and the spread of new technologies have all but eliminated the obstacles that once hindered the ability of parties to litigate their cases in different parts of the State. Long-distance communication has become routine. Travel is safe, easy, fast and affordable. Regional prejudices, to the extent they existed, have dissipated.

These considerations were never really behind the doctrine in any case. This court adopted intrastate *forum non conveniens* in *Torres v. Walsh* (1983), 98 Ill. 2d 338, in the wake of popular criticism that plaintiffs' lawyers were exploiting the venue rules to shop for more generous juries. If that criticism ever had any empirical or analytical basis, it is long since gone.

If there are abuses today, they are committed not by plaintiffs, but by defense counsel. *Forum non conveniens* motions have become a routine and lamentable part of defense strategy. The litigation of those motions in the circuit courts and the appeals that inevitably follow consume an increasing share of scarce judicial resources. As a result, the disposition of legitimate controversies is delayed as our judges find their attention diverted to what the majority concedes is a "battle over minutiae." I fail to see how this advances the interests of justice. The doctrine should be abandoned, and the judgment of the appellate court should be affirmed. I therefore dissent.