SUPERIOR STRUCTURES COMPANY, Plaintiff-Appellee and Cross-Appellant, v. THE CITY OF SESSER, Defendant and Third-Party Plaintiff-Appellant and Cross-Appellee (United States Fidelity and Guaranty Company, Third-Party Defendant).

Fifth District    No. 5—94—0717

Opinion filed February 2, 1996.

655

Gail G. Renshaw, of Lakin Law Firm, of Wood River, for appellant.

Thomas F. Crosby, of Winters, Brewster, Crosby & Patchett, of Marion, for appellee.

JUSTICE KUEHN delivered the opinion of the court:

Plaintiff, Superior Structures Company (Superior), filed an action in Williamson County against the City of Sesser (Sesser) in two counts. Count I sought a sum of money owed pursuant to contract, and count II sought interest pursuant to the Local Government Prompt Payment Act (50 ILCS 505/1 *et seq.* (West 1992)). Third-party defendant United States Fidelity and Guaranty Company is not a party to this appeal.

In late summer 1991, Sesser sought bids to resurface 7.42 miles of Sesser city streets pursuant to Illinois Department of Transportation specifications. Superior submitted the low bid of $296,003 and was awarded the contract. The contract price was based upon the amount of asphalt required to complete the project.

Sesser is located in Franklin County. Sesser's mayor, Ned Mitchell, signed the contract in Franklin County allegedly on September 11, 1991. Superior is located in Williamson County. Superior's vice-president, Erik Luckett, signed the contract on September 16, 1991.

Sesser's city engineer, Lawrence Lipe, served as Sesser's project engineer. The project was to be accomplished in two stages, with all work concluded within 30 days during September and October 1991. Pursuant to a notice to proceed, Superior began work on September

23, 1991. The first stage was completed near the end of September 1991. Sesser, through its project engineer, prepared a punch list. All punch list work had been completed, and so pursuant to the contract, Sesser's city engineer submitted a partial payment estimate. Superior was paid $91,991.92.

After the project was completed, some asphalt was left over. Sesser asked Superior to apply the remaining asphalt to additional Sesser city streets located in the area of Sesser City Hall. These additional streets were not listed in the original contract. Superior completed the additional streets and left the project on October 11, 1991. Sesser's city engineer submitted a second and final partial payment estimate in the amount of $181,376.87. The second partial pay estimate reflected the contract amount less a retainage of $14,387.83. After Superior left the jobsite, Sesser formulated a second and final punch list. The second punch list was mailed to Superior on October 24, 1991, 32 days after the project began. This punch list required the application of additional materials. Sesser was unwilling to compensate Superior for the additional materials required to complete the second punch list.

After the second periodic pay estimate was submitted to Sesser's mayor, the mayor, without consulting the city engineer, ordered compaction studies. The tests were performed by PSI, an engineering firm. The results were directly reported to the mayor on November 8, 1991, and November 27, 1991. PSI's studies revealed that certain locations tested did not meet contract specifications.

Sesser never paid Superior the balance owed on the contract. The mayor gave conflicting testimony regarding Sesser's refusal to pay Superior. The mayor testified that Superior's failure to complete the second punch list resulted in nonpayment. Alternatively, the mayor testified that Superior was not paid because of the compaction test results.

Trial was conducted in Williamson County in April 1994. On June 9, 1994, the trial court found in Superior's favor on count I and awarded Superior the full contract amount, $195,764.70, less a setoff in the amount of $9,244 representing the cost to complete the second punch list. The trial court found that Superior substantially performed the contract by October 31, 1991, and the court awarded prejudgment interest on the $186,520.70 from October 31, 1991, through June 9, 1994, at 5% annually. The trial court found in Sesser's favor on count II.

Sesser appeals and Superior cross-appeals from the trial court's judgment.

■ Initially, Sesser argues that the trial court erred in denying

its motion to transfer the case from Williamson County to Franklin County. Sesser filed a motion to transfer the case on the basis of *forum non conveniens.* The trial court denied the motion. Upon a motion for reconsideration, Sesser argued that venue was never proper in Williamson County. The trial court denied this motion also.

The doctrine of *forum non conveniens* starts with the premise that there is more than one forum having jurisdiction and venue over the case. (*Wieser v. Missouri Pacific R.R. Co.* (1983), 98 Ill. 2d 359, 364, 456 N.E.2d 98, 100.) Therefore, the issue of venue must first be determined.

Sesser correctly argues that the public corporation venue statute is applicable to this case. The public corporation venue statute (735 ILCS 5/2—103 (West 1992)) states that the appropriate venue is the county of the municipality's principal office or *"the county in which the transaction or some part thereof occurred out of which the cause of action arose."* (Emphasis added.) (735 ILCS 5/2—103(a) (West 1992).) The general venue statute also states that venue is proper in the county where the transaction occurred. (735 ILCS 5/2—101 (West 1992).) A comparison of the two venue statutes reveals that the transactional venue language in the general venue statute mirrors the transactional venue language used in the public corporation venue statute.

Sesser argues that the execution of the project contract in Williamson County is insufficient to establish venue. In determining venue, the site where part of the transaction occurred includes the place where any significant negotiations were carried on between the parties and where the agreement was signed. (*People ex rel. Carpentier v. Lange* (1956), 8 Ill. 2d 437, 441, 134 N.E.2d 266, 267-68.) When contractual documents are signed in two counties, jurisdiction and venue are appropriate in either county. (*Consolidated Gasoline Co. v. Lexow* (1942), 316 Ill. App. 257, 260, 44 N.E.2d 927, 928; *Keystone Steel & Wire Co. v. Price Iron & Steel Co.* (1952), 345 Ill. App. 305, 308-09, 103 N.E.2d 143, 145.) Venue does not depend on where the contractual document was signed last. *Keystone Steel & Wire Co.*, 345 Ill. App. at 309, 103 N.E.2d at 145.

We find that the execution of the contract at issue in this case is a part of the transaction out of which the cause of action arose. We further find that as the contract was partly signed in Williamson County, venue in Williamson County is appropriate.

■ We next turn to the *forum non conveniens* issue. To determine if the doctrine of *forum non conveniens* applies, a court must balance private-interest factors affecting the convenience of the parties and public-interest factors impacting the court's administration. (*Gulf Oil*

*Corp. v. Gilbert* (1947), 330 U.S. 501, 508-09, 91 L. Ed. 1055, 1062-63, 67 S. Ct. 839, 843.) All factors must be analyzed flexibly, emphasizing no single factor and affording a plaintiff's choice of forum substantial weight. *Peile v. Skelgas, Inc.* (1994), 163 Ill. 2d 323, 336-37, 645 N.E.2d 184, 190-91.

A trial court's decision will only be reversed if the trial court abused its discretion in weighing the relevant factors. (*Griffith v. Mitsubishi Aircraft International, Inc.* (1990), 136 Ill. 2d 101, 106, 554 N.E.2d 209, 211.) In a motion to transfer based upon the *forum non conveniens* doctrine, the defendant bears the burden to show that the factors weigh so strongly in defendant's favor that a plaintiff's right to select the forum should be overturned. *Griffith*, 136 Ill. 2d at 106, 554 N.E.2d at 211.

Private-interest factors include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." (*Gulf Oil*, 330 U.S. at 508, 91 L. Ed. at 1062, 67 S. Ct. at 843.) Plaintiff's residence is also a private-interest factor to be considered. *Peile*, 163 Ill. 2d at 337-38, 645 N.E.2d at 191.

Public-interest factors include court congestion, an interest in having "localized controversies decided at home," and the burden of jury duty upon local citizens in an unrelated forum. *Gulf Oil*, 330 U.S. at 509, 91 L. Ed. at 1063, 67 S. Ct. at 843.

With these principles in mind, we now consider whether the trial court abused its discretion in denying Sesser's motion to transfer. Franklin County and Williamson County are adjacent counties. Both counties were potential forums for the trial of this case. Superior has its principal place of business in Williamson County. On appeal, Sesser has the burden to establish a clear right to the requested relief. However, Sesser lists no public- and private-interest convenience concerns and makes no argument that Franklin County is more convenient. Witnesses and documents are located in both counties. Keeping in mind our supreme court's continued emphasis that a plaintiff's choice of forum should be granted great deference, we conclude that Sesser did not sustain its burden. The trial court did not abuse its discretion when it denied Sesser's motion to transfer under the doctrine of *forum non conveniens*.

■ Sesser also contends that the trial court erred in admitting deposition excerpts as party admissions. At trial, Sesser objected to the deposition excerpts as to relevance. On appeal, Sesser claims that an inadequate foundation was laid to establish agency. Superior argues

that Sesser waived the agency objection by a lack of specificity. We note that Sesser's relevance arguments did not in any way reference the agency relationship. However, we find that the statements read by Superior would have been irrelevant but for the agency status. While Sesser's trial objections could have been more artful, waiver is not a limitation on the courts. *Geise v. Phoenix Co. of Chicago, Inc.* (1994), 159 Ill. 2d 507, 514, 639 N.E.2d 1273, 1276.

To lay a foundation for agency, Superior must establish that the person was an agent and that the statement was made in the exercise of his duties and pertaining to matters within the scope of his authority. (*C.L. Maddox, Inc. v. Royal Insurance Co. of America* (1991), 208 Ill. App. 3d 1042, 1047, 567 N.E.2d 749, 752, *appeal denied* (1991), 139 Ill. 2d 594, 575 N.E.2d 912, quoting *Taylor v. Checker Cab Co.* (1975), 34 Ill. App. 3d 413, 419, 339 N.E.2d 769, 775.) The existence of the agency relationship must be shown by evidence other than the statements of the purported agent. (*C.L. Maddox, Inc.*, 208 Ill. App. 3d at 1047, 567 N.E.2d at 752, citing *Sommerio v. Prudential Insurance Co. of America* (1937), 289 Ill. App. 520, 523-24, 7 N.E.2d 631, 633.) An agency relationship may be established by circumstantial evidence related to the actions and situations of the parties and other associated circumstances. *Swader v. Golden Rule Insurance Co.* (1990), 203 Ill. App. 3d 697, 702, 561 N.E.2d 99, 102, *appeal denied* (1990), 135 Ill. 2d 567, 564 N.E.2d 848.

Relevant admissions of a party are admissible when offered by the opponent as an exception to the hearsay rule. (*Gillson v. Gulf, Mobile & Ohio R.R. Co.* (1969), 42 Ill. 2d 193, 197, 246 N.E.2d 269, 272.) Sesser claims that the admissions offered by Superior were not admissions relative to a breach of contract and were otherwise irrelevant.

From our review of the record, the deposition excerpts offered by Superior generally involved Superior's compliance with the contract and Sesser's violation of the Local Government Prompt Payment Act. While not specifically related to the breach of contract claim, the excerpts militate against Sesser's position and were properly considered admissions against interest.

Based upon the contract and other related documents admitted into evidence prior to the admission of the deposition excerpts, the agency relationship of Sesser's mayor, Mr. Ned Mitchell, and Sesser's city clerk, Bill Stacey, was established. However, the agency relationship of Rodney Zettler, Tammy Campbell, f/k/a Tammy Brown (Tammy Brown), Lawrence Lipe, and Gary Szczeblewski was clearly not established by prior testimonial or documentary evidence, and the admission of their deposition excerpts was improper.

The admission of evidence is largely within the discretion of the trial court. (*Bafia v. City International Trucks, Inc.* (1994), 258 Ill. App. 3d 4, 10, 629 N.E.2d 666, 671, citing *Jackson v. Pellerano* (1991), 210 Ill. App. 3d 464, 471, 569 N.E.2d 167, 172, *appeal denied* (1991), 139 Ill. 2d 597, 575 N.E.2d 915.) A judgment will not be reversed if no harm resulted from the improper admission of evidence. (*Bafia,* 258 Ill. App. 3d at 10, 629 N.E.2d at 671.) In nonjury cases, it is assumed that the trial court disregarded improperly admitted evidence, if the record contains sufficient competent evidence to sustain the trial court's result. *Knight v. Collings* (1907), 227 Ill. 348, 353, 81 N.E. 346, 347; *People v. Tye* (1990), 141 Ill. 2d 1, 26, 565 N.E.2d 931, 943, *cert. denied* (1991), 502 U.S. 833, 116 L. Ed. 2d 81, 112 S. Ct. 112.

In this case, the trial court heard the testimony of Superior representatives Erik Luckett, Charles Luckett, and William Washer, engineers Tammy Brown and Lawrence Lipe, Sesser Street Superintendent Marion Lappin, and Sesser Mayor Ned Mitchell. Excluding from our consideration the improper admissions, we conclude that the testimony, the documentary evidence, and the arguments of counsel at trial still amply support the trial court's judgment.

■ Sesser next contends that the trial court erred in awarding prejudgment interest, because Sesser is a municipal corporation.

An award of prejudgment interest must be based upon an express agreement or a statutory provision. (*Pinkstaff v. Pennsylvania R.R. Co.* (1964), 31 Ill. 2d 518, 522, 202 N.E.2d 512, 514.) The trial court's prejudgment interest award was pursuant to section 2 of the Interest Act (815 ILCS 205/2 (West 1992)), which provides:

> "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing ***."

A construction contract is an "other instrument of writing" within the meaning of the statute. *E.M. Melahn Construction Co. v. Village of Carpentersville* (1981), 100 Ill. App. 3d 544, 550, 427 N.E.2d 181, 186, citing *Smith v. Gray* (1925), 316 Ill. 488, 499, 147 N.E. 459, 464.

Interest statutes are in derogation of the common law and must be strictly construed. (See *Summers v. Summers* (1968), 40 Ill. 2d 338, 342, 239 N.E.2d 795, 798; *Lakefront Realty Corp. v. Lorenz* (1960), 19 Ill. 2d 415, 423, 167 N.E.2d 236, 240-41.) The prejudgment interest statute cited by the trial court does not specifically reference municipality application. (815 ILCS 205/2 (West 1992).) Municipalities are not generally subject to prejudgment interest pursuant to that statute. (*Kozak v. Retirement Board of Firemen's Annuity & Benefit Fund* (1984), 128 Ill. App. 3d 678, 681, 470 N.E.2d 1293, 1295-96.) However, a municipality will be subject to prejudgment interest

when a trial court determines that the municipality, acting as a corporate entity, wrongfully exacted and held money without just right or claim. (*City of Springfield v. Allphin* (1980), 82 Ill. 2d 571, 577-78, 413 N.E.2d 394, 397, citing *City of Chicago v. Northwestern Mutual Life Insurance Co.* (1905), 218 Ill. 40, 44, 75 N.E. 803, 804; *E.M. Melahn Construction Co.*, 100 Ill. App. 3d at 550, 427 N.E.2d at 187.) In *Fenton v. Board of Trustees* (1990), 203 Ill. App. 3d 714, 561 N.E.2d 105, this court awarded prejudgment interest against a municipal corporation. Although the municipality issue was not directly addressed, the *Fenton* facts and holding comport with cases involving an unreasonable refusal to make payment.

In this case, the trial court awarded prejudgment interest, stating that the "equities of this case" supported the award. The trial court did not indicate that Sesser wrongfully withheld Superior's money. The award of prejudgment interest pursuant to section 2 of the Interest Act was improper.

■ In its cross-appeal, Superior contends that the trial court erred in allowing a $9,244 setoff for the cost of materials necessary to complete the second construction punch list. Lawrence Lipe testified to the $9,244 estimate relying upon Tammy Brown's calculations. Without addressing Superior's objection to the introduction of this evidence, we find that the setoff is against the manifest weight of the evidence.

The testimony of Tammy Brown and Lawrence Lipe confirmed Superior's claim that the contract price was based upon the quantity of material provided. Lawrence Lipe testified that he believed that the contract provided for sufficient materials to complete the project until Sesser elected to have additional streets paved around Sesser City Hall. The second pay estimate reflects complete exhaustion of the materials listed in the contract. Two weeks after Superior completed the project, Sesser presented a second punch list. Completion of the second punch list necessitated additional asphalt materials costing $9,244. Lawrence Lipe testified that pursuant to the standard contract, a contractor would be entitled to additional funds if required to utilize additional materials.

As the contract price was based upon the quantity of materials, and as all of the materials were utilized in completing the project, there is no basis for reducing Superior's judgment for this extra asphalt required to complete the second punch list. Accordingly, we find that the setoff imposed by the trial court is against the manifest weight of the evidence.

Because we find that the setoff was against the manifest weight of the evidence, we do not address the issues of Lawrence Lipe's

expert testimony of the cost to complete the second punch list and the introduction of associated documentary evidence.

■ Superior also contends that the trial court erred in entering judgment in Sesser's favor on Superior's request for interest pursuant to the Local Government Prompt Payment Act. 50 ILCS 505/1 *et seq.* (West 1992).

The Local Government Prompt Payment Act (Act) applies to all municipalities. (50 ILCS 505/2 (West 1992).) Under the Act, a municipality has 30 days in which to approve or disapprove a bill for goods or services. (50 ILCS 505/3 (West 1992).) The 30 days are calculated from either the date that the municipality receives the bill or from the date that the goods or services were received, whichever is later. (50 ILCS 505/3 (West 1992).) If the municipality requires safety or quality assurance testing of goods before approval or disapproval of the bill and when such testing cannot be completed within 30 days after receipt of the goods, approval or disapproval of the bill must be made immediately upon completion of the testing or within 60 days after receipt of the goods, whichever occurs first. (50 ILCS 505/3 (West 1992).) The immediate notice of a bill's disapproval must be in writing. (50 ILCS 505/3 (West 1992).) If the municipality fails to approve or disapprove the bill within these time parameters, a penalty for late payment is assessed. (50 ILCS 505/5 (West 1992).) The Act establishes the interest penalty as 1% of any amount approved and unpaid for each month or fraction thereof. (50 ILCS 505/4 (West 1992).) The penalty for late payment is computed from the date 60 days after receipt of the bill or 60 days after receipt of the goods, whichever is later. 50 ILCS 505/5 (West 1992).

In this case, Superior completed and left the project on October 11, 1991. The thirtieth day after the receipt of goods was November 10, 1991. Sesser received the second partial pay estimate on a date between November 4, 1991, and November 6, 1991. The documentary evidence reflects that Sesser's mayor signed the second partial pay estimate on November 8, 1991. Sesser ordered compaction studies upon completion of the project. Sesser received compaction test results on November 8, 1991, and on November 27, 1991. Sesser therefore completed testing on November 27, 1991. Sixty days after the receipt of goods was December 10, 1991.

Because Sesser undertook testing that could not be completed within 30 days after receipt of goods (before November 10, 1991), approval or disapproval must have been made immediately upon completion of the testing (November 27, 1991). Disapproval of a bill cannot be oral and must be in writing. (50 ILCS 505/3 (West 1992).) The evidence is undisputed that Sesser did not write to Superior of

its discontent with the project until December 26, 1991, 29 days after the testing was completed.

At issue in this case is whether formal notice of disapproval 29 days after the completion of testing is consistent with the Act's immediate notice requirement. To date, there are no cases interpreting the Local Government Prompt Payment Act. To determine legislative intent, we must first consider the statutory language. (*People ex rel. Baker v. Cowlin* (1992), 154 Ill. 2d 193, 197, 607 N.E.2d 1251, 1253.) If the statutory language is somewhat ambiguous, courts can examine legislative history and remarks made by the legislators during debate on the legislation. (*Cowlin*, 154 Ill. 2d at 197, 607 N.E.2d at 1253; *Spinelli v. Immanuel Evangelical Lutheran Congregation, Inc.* (1986), 144 Ill. App. 3d 325, 330, 494 N.E.2d 196, 200, *aff'd* (1987), 118 Ill. 2d 389, 515 N.E.2d 1222.) The entire statute must be considered, along with the subject addressed and the legislature's objective in enacting the statute. *Schultz v. Siddens* (1989), 191 Ill. App. 3d 622, 626, 548 N.E.2d 87, 89.

The word "immediately" is defined as "without interval of time: without delay." (Webster's Third New International Dictionary 1129 (1986).) The legislative debate is not instructive on the meaning of the word. The Act was designed to encourage prompt bill processing by municipalities, ultimately resulting in lower prices of goods and services. The legislature used specific time limits in the Local Government Prompt Payment Act but declined to attach a specific time limit to the term "immediate." Therefore, the determination of the immediacy of notification must necessarily be made on a case-by-case basis. Because the legislature used 30-day time periods in which time to notify contractors, it can be inferred that immediate notification must occur in something less than 30 days. While we cannot say that notification within a day or two is or is not immediate, notification within 29 days is clearly not immediate. We therefore reverse the trial court's judgment on count II of Superior's complaint.

We remand this case to the trial court of Williamson County with directions to enter judgment consistent with this opinion. In entering judgment, the interest award shall be calculated using November 6, 1991, for the date Sesser received Superior's bill, and the award shall be based upon the amount of the second partial pay estimate.

Affirmed in part and reversed in part; cause remanded with directions.

WELCH and MAAG, JJ., concur.