JOHN H. WEBER *et al.*, Plaintiffs-Appellants, v. DE KALB CORPORATION, INC., formerly De Kalb AgResearch, Inc., *et al.*, Defendants-Appellees.

First District (4th Division)    No. 1—93—0550

Opinion filed June 30, 1994.—Rehearing denied September 8, 1994.

Law Offices of John P. Edmonds, Ltd., of Chicago (John P. "Jay" Edmonds and Theodore W. Gebhardt, of counsel), for appellants.

Frederic J. Artwick and Thomas K. Cauley, Jr., both of Sidley & Austin, of Chicago, for appellees.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiffs, John H. Weber, M. Eileen Weber, and John Barry Weber (hereinafter Barry) filed a three-count common law fraud action in the circuit court of Cook County against defendants, De Kalb Corporation, Inc., formerly De Kalb AgResearch, Inc. (hereinafter De Kalb), Heinold Commodities, Inc. (hereinafter Heinold), Harold Heinold, Ralph Klopfenstein, and William Nissen. The action involved two security agreements plaintiffs allege were fraudulently induced by defendants. These agreements gave Heinold and De Kalb a security interest in certain property owned by plaintiffs to secure Barry's debt to Heinold, his employer. Shortly after the agreements were executed, Heinold fired Barry. It then received the proceeds from its interest in the property and applied them to Barry's debt. Heinold filed a counterclaim against Barry, seeking to recover the portion of his debt not satisfied by the proceeds.

Count II of plaintiffs' complaint, seeking rescission of the security agreements, was dismissed. Ultimately, the trial court granted summary judgment on counts I and III of the complaint and entered judgment for Heinold in the amount of $746,267.97 on its counterclaim.

On appeal, plaintiffs contend (1) the trial court erroneously granted summary judgment on their fraud claim; (2) there was no consideration for the security agreements; and (3) judgment was improperly entered for Heinold on its counterclaim as Barry had significant setoffs and claims which the trial court failed to consider.

We affirm.

The following facts are relevant. Barry began his employment as a broker with Heinold, a commodities brokerage firm, in late 1969 or early 1970. In July 1981, he became the vice-president of marketing and remained in this position until his termination on or about July 28, 1983. During his tenure with Heinold, Barry amassed large debts to the company including three promissory notes of $239,251.71, $52,000 and $77,464.56. He also allowed $32,670.78 to accumulate in his Heinold trading account and had a "branch overdraw" of $45,452.93. Further, he owed De Kalb, Heinold's parent corporation, $100,000 resulting from De Kalb's payment of a loan Continental Bank made to Barry which De Kalb guaranteed.

On March 23, 1982, Barry accepted, in writing, a memorandum from the president of Heinold, Ralph Klopfenstein, confirming that his employment would continue "indefinitely or until such time as it may be renegotiated." Barry also received and acknowledged a memorandum from Klopfenstein which provided that one-half of his share from the Heinold profit sharing plan would be applied to his debt to

the company and that all of his bonus would also be used to reduce his debt.

On March 11, 1983, Heinold expressed concern about the sum of Barry's debt. The record demonstrates that, at this point, Barry owed Heinold approximately $266,000. Heinold recognized that Barry was "fully mortgaged" and believed that further action was necessary to secure his debt. Accordingly, Heinold requested additional property as security, including farmland, owned by Barry and his parents, John and Eileen Weber, as additional security. This proposal included proceeds from corn which the Webers were to receive under the United States Department of Agriculture's Payment-in-Kind program (hereinafter PIK), growing crops, and first and second mortgages on parcels of Weber farmland.

On July 14, 1983, an agreement (hereinafter agreement I) was executed between Barry and Heinold giving Heinold a security interest in crops grown on certain Weber property "in consideration for amounts previously or hereafter loaned" by Heinold to Barry. On July 18, 1983, another agreement (hereinafter agreement II) was executed to secure Barry's debt. This agreement was between Barry, his parents John and Eileen, and Heinold, giving Heinold a security interest in crops grown on another parcel of Weber property (hereinafter tract 5). As tract 5 was enrolled in PIK, John Weber assigned De Kalb all of the family's interest pursuant to PIK.

On July 18, 1983, subsequent to the execution of agreement I but prior to the execution of agreement II, Barry attended a meeting with Harold Heinold, Heinold's chairman, William Nissen, the general counsel, and Klopfenstein, the president. At this meeting, Barry stated that Harold Heinold characterized him as a "valued employee" and indicated that the company wanted him "to remain in his corporate positions in accordance with the terms" of his employment agreement. Heinold and Klopfenstein deny that these statements were ever made to Barry.

Klopfenstein testified that he decided to terminate Barry on July 25 or July 26, 1983. Barry was officially terminated on July 28, 1983. Klopfenstein explained that the events prompting Barry's dismissal were customer complaints about Barry—one of which resulted in Heinold's payment of $31,000 to a client who alleged that Barry mishandled his account—and information from Heinold brokers that the company's business was suffering due to an article concerning Barry's problems with the Internal Revenue Service in a Peoria, Illinois, newspaper. When Barry left the company, Heinold estimates that his debt was $475,973.93. Barry does not dispute this figure.

After his discharge, Heinold and De Kalb exercised their security

interest pursuant to agreement II. In December 1983, De Kalb collected PIK proceeds totalling $155,950.48. Also in accordance with agreement II, on January 5, 1984, Heinold acknowledged delivery and receipt of approximately 6,000 bushels of soybeans from which Heinold and De Kalb collected $50,836.50 in sales. All of the proceeds Heinold and De Kalb obtained from both PIK and the crop sales were applied to Barry's debt, reducing it by $206,787.

At this juncture, Barry still owed Heinold the principal and interest on three promissory notes: the first dated August 26, 1980, in the amount of $239,251.71, the second dated January 13, 1983, in the amount of $52,000, and the third dated July 18, 1983, in the amount of $77,464.56. The principal and interest on the promissory notes totalled $715,276.97. Barry also owed Heinold $31,000, the amount the company was forced to pay one of Barry's dissatisfied customers.

On July 18, 1988, Barry filed an action against defendants alleging that, in reliance upon Harold Heinold's assurances that his job was secure, he allowed Heinold to obtain security interests in parcels of land and in proceeds received from PIK belonging to him and his parents. He further claimed that Heinold intended to fire him before it entered into the agreements and that the interests were thus fraudulently induced. Heinold filed a counterclaim against Barry seeking only to recover the principal and interest on the promissory notes, $715,276.97, plus the $31,000 it paid to Barry's customer. The trial court granted summary judgment in favor of Heinold on Barry's complaint and entered judgment in favor of Heinold on its counterclaim against Barry. Barry appeals.

Initially, plaintiffs argue that the trial court improperly determined the acts and omissions of Heinold were insufficient to support a fraud claim and erroneously granted Heinold's summary judgment motion.

•1 In a common law fraud cause of action, a plaintiff must establish that (1) defendant made a false statement of a material fact; (2) defendant knew or believed the statement to be false; (3) defendant intended that plaintiff rely on the statement; (4) plaintiff acted in justifiable reliance on the statement; and (5) plaintiff suffered damages resulting from his reliance. (*Mitchell v. Skubiak* (1993), 248 Ill. App. 3d 1000, 1004-05; see *Bank of Northern Illinois v. Nugent* (1991), 223 Ill. App. 3d 1.) The determination of whether plaintiff's reliance was justifiable necessitates an examination of "all of the facts which the plaintiff knew, as well as those facts the plaintiff could have learned through the exercise of ordinary prudence." *Adler v. William Blair & Co.* (1993), 245 Ill. App. 3d 57, 65.

In count I of the complaint plaintiffs allege that on July 18, 1983,

defendants Harold Heinold and William Nissen represented that Barry was a "valued employee" and that they wanted him "to remain in his corporate positions in accordance with the terms of the [employment] agreements." These defendants asked Barry to pledge additional security for his debts to the company and requested that this security consist of parcels of farmland and certain crops growing thereon. These parcels of land were owned by Barry and his parents. Plaintiffs claim that on July 18, 1983, in reliance upon the representations of defendants Harold Heinold and William Nissen that Barry was a "valued employee" and that his position was secure, they executed agreement II giving Heinold an interest in tract 5 (agreement I is not in issue as it was executed prior to the alleged misrepresentations). On July 28, 1983, Barry's employment was terminated.

Further, plaintiffs allege that defendants Harold Heinold and William Nissen intentionally misrepresented facts and deceived them by failing to disclose their intention to terminate Barry's employment soon after the agreements were executed. Subsequent to Barry's firing, Heinold and De Kalb exercised their rights and collected both the growing crop proceeds and the PIK proceeds from the specified Weber land.

●2 Regarding our analysis of agreement II, we will differentiate between Barry and his parents. We first consider Barry and will assume, *arguendo*, that he has satisfied the first four elements of his fraud cause of action and will focus on the fifth element, damages resulting from the allegedly false statement. Pursuant to agreement II, Heinold and De Kalb exercised their interests and received $206,787 in both growing crop and PIK proceeds. Barry asserts that this agreement with Heinold prevented him from stopping the commencement of foreclosure proceedings on the family's farmland.

The record, however, does not support this contention. Instead, it reveals that foreclosure proceedings on the agreement II land commenced prior to the agreement's execution. The primary mortgagee on tract 5, the Federal Land Bank of St. Louis, sent Barry a letter accelerating the mortgage payments and demanding payment of $725,000, the entire amount owed. Continental Bank, which held a secondary interest in tract 5, demanded payment of almost $1 million, the outstanding principal of Barry's loans plus interest. The land was eventually foreclosed upon in August 1984. All of the amounts demanded by the lending institutions exceeded both Barry's equity in the land and the land's value. There is no evidence that Heinold's exercise of its interest in agreement II caused Barry to lose tract 5. We find that the record does not support Barry's damages claim resulting from his entrance into agreement II and his claim

consequently fails as he has not satisfied all of the elements of a common law fraud cause of action.

•3 The fraud claim of John and Eileen Weber must also fail as the alleged misrepresentations in the complaint were not made directly to either John or Eileen and they accordingly had nothing upon which to rely. Moreover, Heinold never had any contact with them whatsoever and there is no evidence that they signed agreement II in reliance upon any representations made to Barry. In fact, in his deposition, when asked if he entered into the agreement to ensure Barry's continued employment with Heinold, John stated: "I don't know that that was a consideration at all."

•4 Next, plaintiffs argue that both agreements lacked consideration as they were "given in exchange for Barry Weber's continued employment" at Heinold. In evaluating this claim, the trial court applied the parole evidence rule as the claim was contractual in nature. It ruled that the extrinsic evidence offered by plaintiffs, the statements allegedly made by Heinold representatives, could not be introduced into evidence.

"Under the parol evidence rule, extrinsic or parol evidence concerning a prior or contemporaneous agreement is not admissible to vary or contradict a fully integrated writing." (*Geoquest Productions, Ltd. v. Embassy Home Entertainment* (1992), 229 Ill. App. 3d 41, 44.) Such generally prohibited evidence may be admitted to demonstrate additional consistent terms of the contract if the writing is incomplete or ambiguous. *Koester v. Weber, Cohn & Riley, Inc.* (1989), 193 Ill. App. 3d 1045.

It is the province of the trial court to determine, as a matter of law, whether a document constitutes a fully integrated writing. (*Pecora v. Szabo* (1981), 94 Ill. App. 3d 57.) "Under the four corners test, the court must find from the contract itself that the document is incomplete before it will allow the admission of extrinsic evidence." (*Geoquest*, 229 Ill. App. 3d at 45.) The circumstances of the case as well as any relevant evidence will also be considered in making the total integration determination. *Hartbarger v. SCA Services, Inc.* (1990), 200 Ill. App. 3d 1000.

Both agreements patently state that they are made "in consideration for amounts previously or hereinafter loaned to Debtor [Barry] by Secured Party [Heinold]." We note that they do not, as plaintiffs assert, state that they are given in consideration for Barry's future employment. They further provide: "In order to secure the repayment of such sums, the Debtor hereby assigns, grants and transfers a security interest to the Secured Party in all crop[s] now growing or hereafter grown on the parcel of real property described as ***." The

trial court found that the agreements constituted the entirety of the parties' intent and declined to permit the introduction of extrinsic evidence. We agree and find that the trial court did not err in applying the parole evidence rule to these facts.

●5 Finally, plaintiffs opine that the trial court improperly entered judgment in favor of Heinold on its counterclaim as it failed to consider their setoffs and claims which would have nullified any damages suffered by Heinold.

"The burden is on the appellant to submit a record that fully and fairly presents all matters necessary and material for a decision on the questions he raises." (*In re Estate of Jacobs* (1989), 189 Ill. App. 3d 625, 629.) Reversal is not mandated when it must be based on speculation and conjecture and any uncertainty stemming from an incomplete record will be resolved against the appellant. In the absence of an adequate record, we will presume the trial court's decision is grounded in law and has a sufficient factual basis. *Salazar v. Wiley Sanders Trucking Co.* (1991), 216 Ill. App. 3d 863, 868.

The order from which plaintiffs appeal simply states that judgment is entered in favor of Heinold on its counterclaim and does not contain the reasons for the trial court's decision. Plaintiffs seek review of this judgment, yet they failed to provide this court with the transcript of the proceedings relative to this issue or any other information pertaining thereto. In accordance with relevant authority, we thus decline to address the merits of plaintiffs' contentions regarding Heinold's counterclaim.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HOFFMAN, P.J., and THEIS, J., concur.