659 N.E.2d 448 (1995)
276 Ill.App.3d 1099
213 Ill.Dec. 532
Scott HEFNER, Special Administrator of the Estate of Clarence Hefner, Deceased, Plaintiff-Appellee,
v.
OWENS-CORNING FIBERGLAS CORP., Defendant-Appellant M.H. Detrick, Inc., Defendant.
No. 5-95-0058.
Appellate Court of Illinois, Fifth District.
December 27, 1995.
*450 Raymond R. Fournie, Thomas B. Weaver, Armstrong, Teasdale, Schlafly & Davis, St. Louis, Missouri; Ruth E. VanDemark, Law Offices of Ruth E. VanDemark, Chicago, Illinois (Karen I. Ward, Owens-Corning Fiberglas Corporation, Granville, Ohio, of counsel), for Owens-Corning Fiberglas Corporation.
Edward J. Kionka, Carbondale, Illinois; Brocton Lockwood, John Speroni, Lockwood & Speroni, P.C., Marion, Illinois; Charles Marshall, St. Louis, Missouri, for Clarence Hefner.
Susan Gunty, Gunty & McCarthy, Chicago, Illinois, for M.H. Detrick Company.
Justice KUEHN[1] delivered the opinion of the court:
Defendant, Owens-Corning Fiberglas Corporation (OCF), brings this interlocutory appeal pursuant to Supreme Court Rule 306(a)(2) (155 Ill.2d R. 306(a)(2)), contending that the Madison County trial court's denial of its motion for reconsideration of the motion for transfer under the doctrine of forum non conveniens was an abuse of discretion. When this appeal was filed, Clarence Hefner, the deceased, was the named plaintiff. Following Clarence Hefner's death, Scott Hefner was substituted as plaintiff by July 19, 1995, order of this court.
Clarence Hefner was employed by Electrical Energy, Inc. (EEI), from 1965 through 1992. From 1965 to 1975, Clarence Hefner was exposed to asbestos-containing products which were manufactured, sold, or distributed by OCF. In August 1994, Clarence Hefner was diagnosed with malignant mesothelioma, a rapidly spreading, fatal cancer, caused by exposure to asbestos. Clarence Hefner filed a complaint in Madison County against defendants Owens-Corning Fiberglas Corporation and M.H. Detrick, Inc. On November 14, 1994, Clarence Hefner filed a motion for immediate trial setting due to the rapid deterioration of his health and stated that he might not be able to attend or testify at trial if his case did not receive an immediate trial setting.
On November 16, 1994, defendant Owens-Corning Fiberglas Corporation filed its motion to transfer venue from Madison County to Massac County based on the doctrine of forum non conveniens. Defendant M.H. Detrick, Inc., did not join in this motion.
On December 9, 1994, the circuit court entered an order granting Clarence Hefner's motion, setting the case for trial on January 23, 1995, and denying OCF's motion for transfer. OCF did not appeal this order. Discovery proceeded and included interrogatory *451 answers, fact witness and expert witness disclosures, and depositions. None of the fact witnesses listed by either party reside in Madison County or Massac County. Clarence Hefner lives in Pulaski County and has never lived or worked in Madison County. Pulaski County is adjacent to Massac County. His asbestos exposure occurred in Massac County. His family physician is located in Massac County. All physicians treating the mesothelioma are located outside Illinois subpoena power, in Paducah, Kentucky. Most expert witnesses are located out-of-State. OCF listed expert witnesses in Madison County and St. Clair County.
On January 10, 1995, OCF filed a motion for reconsideration of its motion for transfer under the doctrine of forum non conveniens. On January 20, 1995, the circuit court heard and denied OCF's motion. On January 23, 1995, the first day of trial, OCF filed a petition for leave to appeal the court's denial of its motion for transfer under Supreme Court Rule 306. On March 14, 1995, this court granted OCF's petition.
In its brief, OCF contends that the trial court abused its discretion when it denied OCF's motion for transfer under the doctrine of forum non conveniens, for the following reasons:
(1) the well-established doctrine of forum non conveniens compelled the transfer of this case;
(2) the factors considered by the court in denying its motion for transfer are without basis in law or policy; and
(3) the policies of fairness and justice compel reversal of the court's ruling.
We disagree and affirm the trial court's ruling.
The doctrine of forum non conveniens has its roots in equity. (Bland v. Norfolk & Western Ry. Co. (1987), 116 Ill.2d 217, 223, 107 Ill.Dec. 236, 239, 506 N.E.2d 1291, 1294.) The doctrine starts with the premise that there is more than one forum having jurisdiction and venue over the case. (Wieser v. Missouri Pacific R.R. Co. (1983), 98 Ill.2d 359, 364, 74 Ill.Dec. 596, 598, 456 N.E.2d 98, 100.) The doctrine embraces the trial court's discretionary power to decline the exercise of jurisdiction and direct the lawsuit to an alternative forum better serving the parties' convenience. (Wieser, 98 Ill.2d 359, 74 Ill.Dec. 596, 456 N.E.2d 98; Washington v. Illinois Power Co. (1991), 144 Ill.2d 395, 399, 163 Ill.Dec. 490, 491, 581 N.E.2d 644, 645.) Central to an analysis of the doctrine is understanding that by its very terms, the doctrine is about convenience of the litigants.
To determine if the doctrine of forum non conveniens applies, a court must balance private-interest factors affecting the convenience of the parties and public-interest factors impacting the court's administration. (Gulf Oil Corp. v. Gilbert (1947), 330 U.S. 501, 508-09, 67 S.Ct. 839, 843, 91 L.Ed. 1055, 1062-63.) The balancing analysis requires an evaluation of relevant factors in their entirety rather than an emphasis on any single factor. Peile v. Skelgas, Inc. (1994), 163 Ill.2d 323, 336-37, 206 Ill.Dec. 179, 185, 645 N.E.2d 184,190.
Private-interest factors include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." (Emphasis added.) (Gulf Oil, 330 U.S. at 508, 67 S.Ct. at 843, 91 L.Ed. at 1062.) Some of the other private-interest factors taken into consideration include the residence of plaintiff (Peile, 163 Ill.2d at 337-38, 206 Ill.Dec. at 186, 645 N.E.2d at 191) and the complexity of the litigation. Mowen v. Illinois Valley Supply Co. (1994), 257 Ill.App.3d 712, 717, 195 Ill. Dec. 868, 870, 629 N.E.2d 176, 178.
Public-interest factors include court congestion, an interest in having "localized controversies decided at home," and the burden of jury duty upon local citizens in an unrelated forum. Gulf Oil, 330 U.S. at 509, 67 S.Ct. at 843, 91 L.Ed, at 1063.
In 1983, our supreme court held that common law provided the authority to transfer cases on an intrastate basis under the forum non conveniens doctrine. (Torres v. Walsh *452 (1983), 98 Ill.2d 338, 347, 74 Ill.Dec. 880, 884, 456 N.E.2d 601, 605.) In finding that trial courts have authority to transfer cases on an intrastate basis, the supreme court quoted Gulf Oil and listed the private- and publicinterest factors set forth above. (Torres, 98 Ill.2d at 345, 74 Ill.Dec. at 883-84, 456 N.E.2d at 604-05.) In Torres, the supreme court cautioned lower courts that unless the factors "strongly favor the defendant, * * * the plaintiff should be allowed to exercise his choice in deciding in what forum to bring the case when venue is proper." Torres, 98 Ill.2d at 351, 74 Ill.Dec. at 886, 456 N.E.2d at 607.
The supreme court recently discussed the forum non conveniens issue in Peile and restated its position that the doctrine of forum non conveniens remains a viable doctrine. The supreme court reiterated the importance of flexible evaluation of Gulf Oil private- and public-interest considerations. (Peile, 163 Ill.2d at 336-37, 206 Ill.Dec. at 185-86, 645 N.E.2d at 190-91.) The supreme court again emphasized that a plaintiff's choice of forum is substantial. (Peile, 163 Ill.2d at 337, 206 Ill.Dec. at 186, 645 N.E.2d at 191.) While the supreme court noted that a plaintiff's right diminishes when the forum selected is not his or her county of residence and where the forum is not the situs of the injury, it did not hold that a case should be transferred to another county simply because the injury was sustained there or the plaintiff lives there. (Peile, 163 Ill.2d at 337-38, 206 Ill.Dec. at 186, 645 N.E.2d at 191.) Ultimately, the doctrine is about convenience, not counties, and the Peile decision reaffirms this basic truth.
In Gulf Oil, the United States Supreme Court emphasized that "[t]he doctrine leaves much to the discretion of the court to which plaintiff resorts * * *." (Gulf Oil, 330 U.S. at 508, 67 S.Ct. at 843, 91 L.Ed, at 1062.) A trial court's decision will be reversed only if the trial court abused its discretion in weighing the relevant factors. (Griffith v. Mitsubishi Aircraft International, Inc. (1990), 136 Ill.2d 101,106,143 Ill.Dec. 274, 276, 554 N.E.2d 209, 211.) When the relevant factors are reasonably balanced, the trial court's determination receives great deference. Piper Aircraft Co. v. Reyno (1981), 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419,436.
We previously confirmed that the question on review is not whether the appellate court agrees with the circuit court's denial of a forum non conveniens motion, but whether the circuit court "acted arbitrarily, without employing conscientious judgment, or whether, in view of all of the circumstances, the court exceeded the bounds of reason and ignored recognized principles of law," resulting in substantial prejudice. Mowen, 257 Ill.App.3d at 714, 195 Ill.Dec. at 870, 629 N.E.2d at 178.
In a motion to transfer under the doctrine of forum non conveniens, it is defendant's burden to show that the factors weigh so strongly in defendant's favor that a plaintiff's right to select the forum should be overturned. (Brown v. Illinois Power Co. (1995), 269 Ill.App.3d 1107, 1109, 207 Ill.Dec. 619, 621, 647 N.E.2d 1112, 1114, citing Griffith, 136 Ill.2d at 106, 143 Ill.Dec. at 276, 554 N.E.2d at 211.) Defendant must show "a clear right to the relief" requested. (Weaver v. Midwest Towing, Inc. (1987), 116 Ill.2d 279, 285, 107 Ill.Dec. 685, 687, 507 N.E.2d 838, 840.) "Any doubts arising from the inadequacy of the record will be resolved against the defendant." Weaver, 116 Ill.2d at 285,107 Ill.Dec. at 687, 507 N.E.2d at 840.
With these principles in mind, we now consider whether the trial court abused its discretion in denying OCF's motion to transfer. At the hearing, OCF presented the following facts: Clarence Hefner filed his complaint in Madison County. His asbestos exposure occurred in Massac County. He lived in Pulaski County. None of his family members lived in Madison County or Massac County. His family physician practiced in Massac County, but the physicians with whom he treated for mesothelioma all practiced in Paducah, Kentucky. Clarence Hefner's expert witness was from Michigan. Clarence Hefner listed no other fact witnesses. None of OCF's witnesses were located in Madison County or Massac County, with the majority located out-of-State.
*453 The first private-interest factor we consider is the convenience of the forum to the witnesses and parties. Clarence Hefner's family physician is in Massac County. Hefner's primary cancer specialists are in Kentucky, and the relevant medical testimony will come from these physicians. That plaintiff's family doctor resides in Massac County does not significantly credit defendant's burden of showing Massac County to be a more convenient forum. Clarence Hefner's other fact witnesses all reside outside Madison County or Massac County. Clarence Hefner listed coworkers as fact witnesses only in the event he was unable to testify due to medical difficulties or death. OCF also listed Clarence Hefner's coworkers as potential witnesses, but the record fails to include the addresses of these witnesses and therefore lacks support that these witnesses reside in Massac County.
Most of OCF's witnesses are located outof-State, and the few expert witnesses located in Illinois are in Madison County, St. Clair County (next to Madison County), and several northern Illinois counties. Because of their locations, virtually all of defendant's witnesses will need to travel to court, regardless of the chosen forum. By itself, the location of one potential witness in Massac County, Clarence Hefner's family physician, is unpersuasive. Overall, the convenience factor does not weigh heavily in favor of OCF's requested transfer to Massac County.
OCF states that any fault for lack of proof regarding Clarence Hefner's coworker's residences lies with Clarence Hefner for providing incomplete interrogatory answers. Furthermore, OCF claims that based upon the "scanty information" provided in Clarence Hefner's interrogatory answers, by inference, the coworkers must reside in Massac County. OCF states that Clarence Hefner's failure to object to this inference validates the inference. OCF cites no legal authority for this proposition. OCF's conclusory suggestion that it assumed Clarence Hefner's coworkers were as stable as Clarence Hefner and still resided in the Massac County area is completely without basis in fact.
Reversal is inappropriate when based on speculation and conjecture. (Weber v. DeKalb Corp., Inc. (1994), 265 Ill.App.3d 512, 519, 202 Ill.Dec. 155, 160, 637 N.E.2d 694, 699, appeal denied (1994), 158 Ill.2d 566, 206 Ill.Dec. 847, 645 N.E.2d 1369.) OCF bears the burden to establish that Massac County is more convenient than Madison County. (Brown, 269 Ill.App.3d at 1109, 207 Ill.Dec. at 621, 647 N.E.2d at 1114, citing Griffith 136 Ill.2d at 106, 143 Ill.Dec. at 276, 554 N.E.2d at 211.) There is no authority for shifting the burden to Clarence Hefner, as OCF suggests. As previously stated, "[a]ny doubts arising from the inadequacy of the record will be resolved against the defendant." Weaver, 116 Ill.2d at 285,107 Ill.Dec. at 687, 507 N.E.2d at 840.
The second private-interest factor we consider is ease of access to sources of proof. OCF contends that the sources of proof are centered in Massac County because Clarence Hefner's employer, EEI, is located there. The record indicates that Clarence Hefner worked at an EEI plant in Massac County. OCF speculates, without specificity, that sources of proof are located at this plant. However, the record is silent regarding EEI's home office location and the existence and location of EEI's records. Inadequacies in the record are resolved against OCF. Weaver, 116 Ill.2d at 285, 107 Ill.Dec. at 687, 507 N.E.2d at 840.
The next private-interest factor considered is a view of the scene of the injury. Clarence Hefner's asbestos exposure occurred from 1965 to 1975. The site has undoubtedly been altered in the last 20 years. Therefore, this factor does not support a transfer to Massac County. Additionally, OCF made no showing that such a view was necessary. The supreme court has held that a view is not an absolute right and that the trial court may permit a jury view of the premises only to aid the jury to better understand and apply the evidence. Boner v. Peabody Coal Co. (1991), 142 Ill.2d 523, 535, 154 Ill.Dec. 662, 668, 568 N.E.2d 883, 889.
OCF argues that the trial court weighed no private-interest factors in refusing OCF's request to transfer the case from the forum of Clarence Hefner's choice and that the trial court's decision resulted in new *454 law. The ability to try a case in an expeditious and easy manner has always been recognized as a private-interest factor. (Gulf Oil, 330 U.S. at 508, 67 S.Ct. at 843, 91 L.Ed at 1062; Peile, 163 Ill.2d at 337, 206 ID.Dec. at 186, 645 N.E.2d at 191.) This final private-interest factor is the catchall factor including "all other practical problems that make trial of the case easy, expeditious and inexpensive." (Peile, 163 Ill.2d at 337, 206 Ill.Dec. at 186, 645 N.E.2d at 191, quoting Gulf Oil, 330 U.S. at 508, 67 S.Ct at 845, 91 L.Ed. at 1062.) As the trial court noted in its order denying OCF's motion to transfer, Madison County established an administrative plan and special procedures to swiftly handle and try asbestos cases. The asbestos administrative plan included the availability of records at the Madison County Central Records Depository. A court can take judicial notice of its own rules. (Pettigrove v. Parro Construction Corp. (1963), 44 Ill. App.2d 421, 426, 194 N.E.2d 521, 524.) In Mowen, this court previously held that in determining convenience, a trial court could properly consider the complexities of the litigation involved and whether the forum to which the defendant seeks transfer has the facilities and expertise available to try a complex case. (Mowen, 257 Ill.App.3d at 717, 195 Ill.Dec. at 871-72, 629 N.E.2d at 179-80.) We find that this private-interest factor favors Clarence Hefner's choice of forum and was appropriately considered by the trial court.
Turning to the public-interest factors, OCF contends that Madison County's docket is more congested than that of Massac County, that the site of the injury always has a strong interest in the outcome of litigation, and that Madison County citizens would be unfairly burdened with jury duty. We find that the court properly considered these factors.
The trial court noted that cases in Madison County are tried faster than in most counties. It noted that Massac County has only one trial judge and that court docket congestion of the respective courts is relative. We take judicial notice of the 1994 statistical data compiled by the Administrative Office of Illinois Courts and find that the average number of months between filing suit and verdict in Massac County is 24.8 months. (See Mowen, 257 Ill.App.3d at 719, 195 Ill.Dec. at 872, 629 N.E.2d at 180.) The trial court noted that the Madison County administrative asbestos trial orders provide case management support. Clarence Hefner filed suit on September 23, 1994. Due to his rapidly deteriorating health, Clarence Hefner requested an immediate trial setting. With the asbestos case administrative plan, Madison County accommodated his request and provided a January 23, 1995, trial setting, just four months after suit was filed.
While the county where the injury occurred generally has a strong interest in the outcome of litigation, this general rule does not necessarily apply to cases involving complex products liability issues. (See Mowen, 257 Ill.App.3d 712, 195 Ill.Dec. 868, 629 N.E.2d 176.) The trial court noted that due to the nature of asbestos litigation, this case is not truly connected to any one county and has nationwide implications.
The trial court considered and determined that a jury trial would not unduly burden the citizens of Madison County. It is obvious that a lengthy complex jury trial in a smaller county like Massac County will temporarily cause a major disruption of the court system, while it will cause only minor disruptions in a larger county like Madison County. (Mowen, 257 Ill.App.3d at 720,195 Ill.Dec. at 873, 629 N.E.2d at 181.) A trial court can better assess a case's burden on its docket than can a reviewing court. Boner, 142 Ill.2d at 539,154 Ill.Dec. at 664, 568 N.E.2d at 891.
OCF contends that the trial court's ruling was clearly erroneous as contrary to Overturf v. Illinois Central Gulf R.R. Co. (1989), 195 Ill.App.3d 962,142 Ill.Dec. 651, 553 N.E.2d 1. Mark Overturf was struck by an Illinois Central Gulf train while walking alongside railroad tracks located in Franklin County, but he sued the railroad in Madison County. (Overturf, 195 Ill.App.3d at 963, 142 Ill.Dec. at 651, 553 N.E.2d at 1.) Mark Overturf resided in Franklin County. (Overturf, 195 Ill.App.3d at 964, 142 Ill.Dec. at 652, 553 N.E.2d at 2.) Medical witnesses were located in Franklin County and in adjacent counties. (Overturf, 195 Ill.App.3d at 964, 142 *455 Ill.Dec. at 652, 553 N.E.2d at 2.) The investigating State trooper resided in a county adjacent to Franklin County. (Overturf, 195 Ill.App.3d at 965, 142 Ill.Dec. at 652, 553 N.E.2d at 2.) The railroad defendant transacted business in Madison County. (Overturf, 195 Ill.App.3d at 965,142 Ill.Dec. at 652, 553 N.E.2d at 2.) In weighing the privateand public-interest factors, this court noted that Mark Overturf's injury situs created "a localized controversy with a local interest in having the controversy decided at home." (Overturf, 195 Ill.App.3d at 965, 142 Ill.Dec. at 652, 553 N.E.2d at 2.) Overturf does not stand for the proposition that a forum with witnesses in adjacent counties is automatically the correct forum, as OCF suggests. Overturf confirms that an accident location creating a localized controversy weighs heavily in the balance. Clarence Hefner's suit involved prolonged exposure to a nationally manufactured and distributed product and therefore did not involve a localized controversy. Location of witnesses in a county adjacent to the county suggested by the defendant was merely one factor in the Overturf balance.
OCF next contends that the court inappropriately considered a complex litigation factor without basis in law. The court specifically acknowledged its familiarity with Peile and Washington. Recognition of the fact that Madison County courts are uniquely equipped to handle complex litigation quickly and expeditiously clearly falls within the rubric of the administrative concerns that the supreme court articulated in Peile. As noted in the sections discussing the private- and public-interest factors, we find that the court properly considered all relevant factors when it ruled.
Finally, OCF contends that the denial of its motion to transfer is not fair and just. As previously noted, the court considered applicable law and public policy. We note that OCF sought transfer of this case to Massac Countynot to the county of Clarence Hefner's residence. Defendant should not be granted any greater presumption than plaintiff in selection of a forum. Boner, 142 Ill.2d at 542, 154 Ill.Dec. at 663, 568 N.E.2d at 892.
In conclusion, we emphasize that OCF has the burden to establish factors that weigh so strongly towards transfer that Clarence Hefner's Madison County selection should be disturbed. To justify a transfer, the trial court must determine that Massac County was clearly more convenient for the parties, the witnesses, and the public. A trial court has broad discretion in ruling upon a forum non conveniens motion, and the court's ruling will not be overturned on review unless the court clearly abused its discretion.
This case presented a unique set of facts. The record revealed only one potential witness in Massac County. Essentially, all witnesses would have to travel to court regardless of the selected forum. OCF was not seeking to transfer this case to the county where Clarence Hefner resided. Clarence Hefner suffered from malignant mesothelioma and had a right to testify at his trial. In order to safely do so, he needed an expeditious trial setting. Madison County was able to accommodate his request, in part due to its administrative organization of asbestos cases. This was not a localized case with the need to access local sources of proof, and in fact this case has national implications. Keeping in mind the supreme court's continued emphasis that a plaintiff's choice of forum should be granted great deference, we conclude that OCF did not sustain its burden and that the trial court did not abuse its discretion when it denied OCF's motion for reconsideration for transfer under the doctrine of forum non conveniens.
For the foregoing reasons, the order of the circuit court of Madison County is affirmed, and this cause is remanded to the circuit court.
Affirmed and remanded.
WELCH and HOPKINS, JJ., concur.

ORDER
This cause has been considered on appellee's motion for leave to file additional supporting record, appellant's objections to said motion and motion to strike portions of appellee's brief referring to the additional supporting record, appellee's motion for leave to reply to appellant's objections to his motion, *456 M.H. Detrick Company's motion to lift stay order as applied to M.H. Detrick and mandate entry of judgment on the verdict instanter, appellant's response to M.H. Detrick's motion, M.H. Detrick's motion for leave to file a reply to appellant's objections, appellee's motion to supplement the record on appeal with Clarence Hefner's complete discovery deposition, and appellant's objections to said motion. The court having examined the record on appeal, considering the matter on rehearing, and being fully advised in the premises finds as follows:
That on September 13, 1995, the court filed its Rule 23 Order (Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23, effective July 1, 1994);
That on October 5, 1995, appellant filed its petition for rehearing; and
That on October 19, 1995, the court granted appellant's petition for rehearing.
The court now desires to vacate its previous decision and substitute a new decision.
Motions filed by both parties, some of which were previously decided within the Rule 23 Order, are now considered in this order.
On April 11, 1995, appellee filed a motion seeking leave to file additional supporting record.
On April 21, 1995, appellant filed a motion to strike portions of appellee's brief referring to the additional supporting record.
On April 24, 1995, appellee filed a motion seeking leave to reply to appellant's objections to his motion seeking leave to file additional supporting record.
On April 27, 1995, this court entered an order that these three motions were to be taken with the case.
An appellate court's review on a motion is limited to matters considered by the trial court in ruling on the motion. (Wieser v. Missouri Pacific R.R. Co. (1983), 98 Ill.2d 359, 363-64, 74 Ill.Dec. 596, 598, 456 N.E.2d 98, 100; Logan v. Old Enterprise Farms, Ltd. (1990), 139 Ill.2d 229, 237, 151 Ill.Dec. 323, 327, 564 N.E.2d 778, 782.) We are constrained to consider only the evidence before the court when it ruled upon appellant's motion for reconsideration of its motion for transfer.
On November 13, 1995, appellee filed a motion to supplement the record on appeal with the complete discovery deposition of Clarence Hefner. Appellant included excerpts of this discovery deposition in its supporting record. Appellant objects to appellee's motion to supplement the record on appeal with the balance of Clarence Hefner's discovery deposition on the basis that supplementation is improper because the deposition was never filed in circuit court.
As previously stated, the record on interlocutory appeal is confined to matters presented to and considered by the trial court. (Logan, 139 Ill.2d at 237,151 Ill.Dec. at 327, 564 N.E.2d at 782; Wieser, 98 Ill.2d at 363-64, 74 Ill.Dec. at 598, 456 N.E.2d at 100.) Clarence Hefner's discovery deposition, while taken before the trial court ruled upon appellant's motion for reconsideration, bears no Madison County Circuit Court Clerk's Office file stamp.
IT IS THEREFORE ORDERED that appellee's motion for leave to reply is granted, appellee's motion to supplement the record is denied, and appellant's motion to strike those portions of appellee's brief referring to the additional supporting record is granted.
IT IS FURTHER ORDERED that M.H. Detrick's motion to lift the stay order as it applies to M.H. Detrick and mandate entry of judgment in M.H. Detrick's favor on the verdict is DENIED as being outside the scope of the instant interlocutory appeal. The court expresses no opinion regarding the efficacy of the jury verdict.
IT IS FURTHER ORDERED that M.H. Detrick's motion for leave to reply to appellant's objections to its request to lift the stay order is DENIED.
IT IS FURTHER ORDERED that appellee's motion to supplement the record on appeal with the complete discovery deposition of Clarence Hefner is DENIED.
IT IS FURTHER ORDERED that the excerpts of Clarence Hefner's discovery deposition included in appellant's supporting *457 record (C. 92-C. 105) are STRICKEN from the supporting record pursuant to Supreme Court Rule 366(a)(5). 155 Ill.2d R. 366(a)(5).
IT IS FURTHER ORDERED that all references to Clarence Hefner's discovery deposition in appellant's briefs and petition are STRICKEN, pursuant to Supreme Court Rule 366(a)(5). 155 Ill.2d R. 366(a)(5).
IT IS FURTHER ORDERED that the decision previously filed in this cause on September 13, 1995, shall be, and the same is hereby, VACATED AND HELD FOR NAUGHT.
IT IS FURTHER ORDERED that the opinion filed on this date shall stand as the decision of the court.
NOTES
[1] Justice Lewis, originally one of the panel members on this case, retired effective August 1, 1995; Justice Kuehn was assigned to this case in substitution for Judge Lewis.