THIRD DIVISION
February 10, 2010

No. 1-08-3213

| | | |
|---|---|---|
| CRAIG WAGNER and MARY WAGNER, | ) | Appeal from the Circuit Court of |
| | ) | Cook County, Illinois |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | No. 07 L 5125 |
| | ) | |
| EAGLE FOOD CENTERS, INC.; CLOROX | ) | |
| PRODUCTS MANUFACTURING COMPANY; | ) | Honorable Diane J. Larsen, |
| and CLOROX SALES COMPANY, | ) | Judge Presiding |
| | ) | |
| Defendants-Appellants | ) | |
| | ) | |
| (Clorox, Inc., and Clorox Company, | ) | |
| | ) | |
| Defendants). | ) | |

PRESIDING JUSTICE MURPHY delivered the opinion of the court:

In January 1999, plaintiff Craig Wagner slipped and fell at an Eagle Food Center in Joliet, Illinois. Craig Wagner and his wife, Mary Wagner, filed a premises liability claim against Eagle and, later, products liability claims against Clorox in Will County, Illinois. Plaintiffs voluntarily dismissed their seventh amended complaint in Will County and refiled their case in Cook County. Defendants filed a motion to dismiss or transfer based on the doctrine of *forum non conveniens*, which the trial court denied. On appeal, defendants argue that the trial court abused its discretion in denying the motion because, by refiling their case in Cook County, plaintiffs were forum shopping in an effort to avoid the Will County court's discovery orders.

## I. BACKGROUND

In August 1999, Craig filed a lawsuit against Eagle in Will County alleging premises liability for Eagle's failure to remove an unidentified "slippery substance" on the floor, causing him to slip and fall. Plaintiffs amended their complaint seven times over the almost seven years that the case was pending in Will County to add allegations that the substance that Craig slipped on was Tilex, a product manufactured by Clorox, that the bottle was defective, and that Clorox and Eagle were acting in concert. A loss of consortium claim was also added on Mary Wagner's behalf. Count I of the seventh amended complaint alleged premises liability against Eagle; counts III and V alleged strict and negligent products liability; and counts II, IV, and VI alleged in-concert liability.

Plaintiffs filed a separate medical-malpractice complaint in Will County against Dr. Surrender Dhiman, who performed surgery on Craig Wagner's elbow. It appears that Clorox filed a third-party complaint against Dhiman in 2001. In 2003, Clorox also filed a third-party complaint against Top Seal Corporation, the manufacturer of the Tilex cap at issue, and Novapak Corporation, the manufacturer of the Tilex bottle. In August 2003, plaintiffs settled their claims against Dhiman for $930,000, and the court ordered that the settlement amount constituted a setoff in plaintiffs' case against Eagle and Clorox.

On November 16, 2005, Clorox propounded supplemental interrogatories to plaintiffs requesting information about plaintiffs' factual basis for their claims that the Tilex bottle "leaked" or "had insufficient tamper resistance." When plaintiffs did not answer, Clorox filed a motion to compel, which the trial court granted. On April 21, 2006, plaintiffs objected to the

1-08-3213

supplemental interrogatories, claiming that they called for a "statement of the mind of another" and that the information would be the subject of "later discovery." Clorox and plaintiffs each filed additional motions to compel answers to discovery. At the hearing on the cross-motions to compel, the trial court stated that it found plaintiffs' April 21, 2006, interrogatory answers "disingenuous." On April 25, 2006, the trial court ordered plaintiffs to respond to defendants' supplemental interrogatories by May 9, 2006, and ordered Clorox to respond to certain of plaintiffs' interrogatories.

On April 26, 2006, plaintiffs filed a motion to voluntarily dismiss their complaint. Clorox objected and sought Supreme Court Rule 219 (210 Ill. 2d R. 219) sanctions. The Will County court found that a plaintiff has an "absolute right" to voluntarily dismiss its cause of action and concluded that plaintiffs' motion was not intended "to simply avoid discovery deadlines." The court also refused to award Clorox fees and expenses. On appeal, the Third District affirmed the denial of fees based on the voluntary dismissal. *Wagner v. Eagle Country Markets, Inc.*, No. 3-06-0460 (June 28, 2007) (unpublished order under Supreme Court Rule 23). It continued:

"The trial court also noted the day before plaintiffs filed their voluntary motion to dismiss that their discovery answers were 'disingenuous.' Furthermore, one month prior to their voluntary motion to dismiss, the court found that plaintiffs had provided no factual basis in the seven complaints or their discovery responses to establish that the Tilex bottle leaked, had insufficient tamper resistance, or was otherwise defective. Based on the record, we may have found

-3-

that Supreme Court Rule 219(e) applied to plaintiffs' dismissal and awarded expenses. However, we are not the trial court." *Wagner*, slip op. at 13. Accordingly, the Third District affirmed. *Wagner*, slip op. at 14.

One year after dismissing their complaint in Will County, plaintiffs refiled their case in Cook County. The seven-count refiled complaint alleged the same causes of action against the same defendants as did the seventh amended complaint filed in Will County. Defendants filed motions to dismiss plaintiffs' case or, in the alternative, to transfer it back to Will County.[1] Citing *Czarnecki v. Uno-Ven Co.*, 339 Ill. App. 3d 504 (2003), they argued that by refiling their case in Cook County, plaintiffs were forum shopping in an effort to avoid the Will County court's discovery orders. In their motions, defendants established that plaintiffs are residents of Will County and that the incident occurred in Will County. Martin Snider, the former district manager for Eagle; Sheila Piontek, a former Eagle employee; and Lester Nelson, a former manager of the Eagle store, provided affidavits stating that they reside in Will County. They further averred that it would be inconvenient to travel to Cook County for the trial of this matter and that it would be more convenient to travel to Will County. Defendants noted that while the case was pending in Will County, the parties had taken the statements of 23 witnesses and 6

---

[1] Eagle also brought a motion in the refiled case to file a third-party complaint against Novapak, Top Seal, and CCL Custom Manufacturing. Plaintiffs state in their brief that Eagle "tactically withdrew the motion pending the *forum non conveniens* motions"; however, they do not cite the relevant pages of the supporting record demonstrating that the motion was withdrawn.

depositions, the court entered 28 discovery orders, and plaintiffs settled their medical-malpractice suit.

In their response, plaintiffs contended that while the Will County case was pending for seven years before the voluntary dismissal, it was still in its "infancy" because Eagle filed for bankruptcy, which caused the case to be placed on the bankruptcy stay calendar. Further, plaintiffs filed a medical-malpractice case against a surgeon who treated Craig Wagner, and defendants filed a third-party complaint against the surgeon. Plaintiffs argued that they did not learn of the existence of Novapak or Top Seal until Clorox filed a third-party complaint on February 3, 2003, nor did they discover that the product was filled and capped by CCL Custom Manufacturing in Cook County until plaintiffs received Clorox's supplemental interrogatory answers on October 4, 2005. They pointed out that discovery in the Will County case was not completed or closed, and only two witness depositions and half of Craig Wagner's deposition had been taken. Plaintiffs argued that their case evolved over the years from one involving premises liability to one involving products liability.

Plaintiffs noted that in August 1999, Clorox Products Manufacturing Company had two manufacturing facilities in Cook County, and it still has a plant in Cook County. Clorox Company is headquartered in California and has no offices, plants, or facilities in Will County. Eagle was headquartered in Rock Island County, Illinois, before it filed for bankruptcy. Top Seal, which manufactured the cap on the Tilex bottle, was headquartered in Arizona and Indiana and was sold to Pennsylvania-based Drug Plastics Corporation. Novapak, which manufactured the Tilex bottle, is headquartered in New Jersey. CCL Custom Manufacturing filled the subject

Tilex bottle in Cook County. CCL was acquired in 2005 by KIK Custom Products, a Canadian company. Its plant was located in Niles, Cook County, Illinois, and it currently conducts business at its offices in Rosemont, Cook County, Illinois.

Plaintiffs identified 9 former CCL, Eagle, and Clorox employees, including CCL's former president and vice-president of engineering, who are Cook County residents; 9 former Novapak, CCL, Top Seal, and Clorox employees who live out of state or whose addresses are unknown but that plaintiffs presumed lived out of state; the former risk supervisor for Eagle, who lives in Rock Island County, Illinois; the former production operations manager at CCL, who lives in Kane County; 11 former Eagle employees; and 7 miscellaneous witnesses or possible witnesses, whose addresses were unknown. They further identified 52 Cook County medical witnesses who treated and continue to treat Craig Wagner's injuries; 6 Will County medical witnesses; 1 Kane County medical witness; and 1 out-of-state medical witness. They noted that Craig had 20 surgeries in Cook County between 2000 and 2008 and 2 surgeries in Will County in 1999. Finally, Eagle's expert witness, Dr. Eugene Litwin, lives in Buffalo Grove, Lake County, Illinois.

The trial court denied defendants' motions to dismiss or transfer. It distinguished *Czarnecki*, noted that "the theories in this case have developed and changed in such a way that *** now the emphasis is on a products liability action." It further noted that the product was assembled in Cook County, a fact that was not determined until 2005. In addition, courts have identified a "more generalized concern" in product liability actions as opposed to slip-and-fall cases, which have a more localized interest. The court reassured defendants that "all of the prior orders that were entered in Will County will certainly be respected by this Court, and *** it

1-08-3213

doesn't start with a blank slate here."

Defendants filed a petition for leave to appeal with this court pursuant to Supreme Court Rule 306(a)(2) (210 Ill. 2d R. 306(a)(2)). On December 24, 2008, we granted the petition.

## II. ANALYSIS

The doctrine of *forum non conveniens* "allows a trial court to decline jurisdiction in the exceptional case where trial in another forum with proper jurisdiction and venue 'would better serve the ends of justice.' " *First American Bank v. Guerine*, 198 Ill. 2d 511, 515 (2002), quoting *Vinson v. Allstate*, 144 Ill. 2d 306, 310 (1991); *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 176 (2003) (the test is whether the relevant factors, viewed in their totality, " 'strongly favor transfer to the forum suggested by defendant' "), quoting *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 107-08 (1990). See 134 Ill. 2d R. 187. A trial court has considerable discretion in ruling on a *forum non conveniens* motion, and its decision to grant or deny that motion will not be reversed absent an abuse of discretion. *Berbig v. Sears Roebuck & Co., Inc.*, 378 Ill. App. 3d 185, 188 (2007). A trial court abuses its discretion when no reasonable person would take the view adopted by the trial court. *Berbig*, 378 Ill. App. 3d at 188.

In resolving *forum non conveniens* questions, the trial court must balance private interest factors, which affect the convenience of the parties, and public interest factors, which affect the administration of the court. *Woodward v. Bridgestone/Firestone, Inc.*, 368 Ill. App. 3d 827, 832 (2006). Each *forum non conveniens* case must be considered as unique on its facts. *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 443 (2006).

1-08-3213

Private interest factors include (1) the convenience of the parties; (2) the relative ease of access to sources of testimonial, documentary, and real evidence; and (3) all other practical problems that make trial of a case easy, expeditious, and inexpensive, for example, the availability of compulsory process to secure attendance of unwilling witnesses, the cost to obtain attendance of unwilling witnesses, and the ability to view the premises, if appropriate. *Guerine*, 198 Ill. 2d at 516.

The public interest factors include (1) the interest in deciding localized controversies locally; (2) the unfairness of imposing the expense of a trial and the burden of jury duty on residents of a county with little connection to the litigation; and (3) the administrative difficulties presented by adding further litigation to court dockets in already-congested fora. *Guerine*, 198 Ill. 2d at 517. Court congestion is a relatively insignificant factor, especially where the record does not show the other forum would resolve the case more quickly. *Guerine*, 198 Ill. 2d at 517.

A trial court does not weigh the private factors against the public factors; rather, it must evaluate the total circumstances of the case in deciding whether the defendant has proven that the balance of factors strongly favors transfer. *Guerine*, 198 Ill. 2d at 518. The defendant must show that the plaintiff's chosen forum is inconvenient to the defendant and another forum is more convenient to all parties. *Guerine*, 198 Ill. 2d at 518. A defendant cannot assert that the plaintiff's chosen forum is inconvenient to the plaintiff. *Guerine*, 198 Ill. 2d at 518. Unless the balance of factors strongly favors a defendant's choice of forum, the plaintiff's choice of forum should rarely be disturbed. *Langenhorst*, 219 Ill. 2d at 444.

Although a plaintiff has a substantial interest in choosing the forum where his rights will

1-08-3213

be vindicated, "the plaintiff's interest in choosing the forum receives somewhat less deference when neither the plaintiff's residence nor the site of the accident or injury is located in the chosen forum." *Guerine*, 198 Ill. 2d at 517. When the home forum is chosen, it is reasonable to assume that the choice is convenient. *Guerine*, 198 Ill. 2d at 517. When the plaintiff is foreign to the forum chosen, however, this assumption is much less reasonable and the plaintiff's choice deserves less deference. *Guerine*, 198 Ill. 2d at 517. When the plaintiff is foreign to the chosen forum and the action that gives rise to the litigation did not occur in the chosen forum, " 'it is reasonable to conclude that the plaintiff engaged in forum shopping to suit his individual interests, a strategy contrary to the purposes behind the venue rules.' " *Dawdy*, 207 Ill. 2d at 174, quoting *Certain Underwriters at Lloyds, London v. Illinois Central R.R. Co.*, 329 Ill. App. 3d 189, 196 (2002). As the supreme court further noted in *Guerine*, "A concern animating our *forum non conveniens* jurisprudence is curtailing forum shopping by plaintiffs." *Guerine*, 198 Ill. 2d at 521. Therefore, since plaintiffs are residents of Will County and the slip-and-fall occurred in Will County, their choice is entitled to "somewhat less deference." *Guerine*, 198 Ill. 2d at 517.

Furthermore, plaintiffs litigated this case in Will County for seven years and voluntarily dismissed it the day after the trial court ordered them to respond to Clorox's supplemental interrogatories by May 9, 2006. Before plaintiffs filed their motion to voluntarily dismiss, the trial court called plaintiffs' interrogatory answers "disingenuous" and found that plaintiffs had provided no factual basis in the seven complaints or their discovery responses to establish that the Tilex bottle leaked, had insufficient tamper resistance, or was otherwise defective. We agree

with defendants that these facts strongly imply that plaintiffs are engaging in impermissible forum shopping.

*Czarnecki v. Uno-Ven Co.*, 339 Ill. App. 3d 504 (2003), is instructive. In *Czarnecki*, the plaintiff filed a personal injury complaint against the defendants in Will County in 1996. Twenty days before the trial date, the plaintiff voluntarily dismissed his complaint. A year later, he refiled a "virtually identical" complaint in Cook County. No new defendants, allegations, or theories of liability were added. The defendants filed motions to transfer the case back to Will County pursuant to the doctrine of *forum non conveniens*. The defendants cited discovery from the Will County action showing that the plaintiff was a resident of Will County; the accident occurred in Will County; the only occurrence witness cited by the plaintiff's interrogatory answers was a Will County resident; a person at the scene immediately before, at the time of, or immediately after the occurrence resided in Ogle County; and two of the plaintiff's treating doctors, his vocational counselor, and two defense-retained opinion witnesses were Cook County contacts. Nine other witnesses listed in the parties' discovery answers were dispersed among six Illinois counties and one Indiana county. The trial court denied the motion.

On appeal, this court concluded that the trial court abused its discretion in denying the motion to transfer. This court found that the private interest factors favored the transfer of the case back to Will County, since the plaintiff was a Will County resident; the place of his injury was in Will County; and five potential witnesses, including the sole occurrence witness, were located in Will County. *Czarnecki*, 339 Ill. App. 3d at 510.

"Moreover, plaintiff's action was originally filed in Will County and proceeded

there for roughly four years. During that time, there is no evidence that plaintiff did not consider Will County to be a convenient and appropriate forum. Consequently, although we still treat plaintiff's decision to voluntarily dismiss and refile in Cook with some deference, that deference is accompanied by a countervailing skepticism, given the circumstances of this case." *Czarnecki*, 339 Ill. App. 3d at 511.

The court accorded less deference to the Cook County contacts cited by the plaintiff, three medical personnel involved in the plaintiff's treatment and two defense-retained opinion witnesses, because the location of a plaintiff's treating physicians should not be given "undue weight," and the location of experts is not relevant because they "are testifying at defendants' request." *Czarnecki*, 339 Ill. App. 3d at 510-11. Furthermore, Will County had a strong interest in resolving the plaintiff's action locally because the plaintiff, who lived in Will County, sought to recover for injuries sustained at a Will County construction site. *Czarnecki*, 339 Ill. App. 3d at 509. "Thus, Will County's interest in securing safety at local construction sites substantially favors transfer to that county." *Czarnecki*, 339 Ill. App. 3d at 509. In addition, "plaintiff's original decision to file in Will County, his voluntary dismissal on the brink of trial, and the subsequent filing of a nearly identical claim in Cook County strongly implies that plaintiff is engaging in impermissible forum shopping." *Czarnecki*, 339 Ill. App. 3d at 509.

*Czarnecki* relied on *Peile v. Skelgas, Inc.*, 163 Ill. 2d 323 (1994). The plaintiff in *Peile*, who was injured in a gas explosion at his Pike County home, originally filed his case in Madison County, but it was later transferred to Pike County. Discovery proceeded in Pike County for two

1-08-3213

years, during which time the plaintiff amended his complaint and added defendants. The plaintiff voluntarily dismissed his complaint two months before the trial date and then refiled in St. Clair County. The trial court denied the defendants' motion to transfer back to Pike County, and our supreme court reversed. *Peile*, 163 Ill. 2d at 344. The court concluded that the plaintiff's second choice of forum should have been accorded less deference. *Peile*, 163 Ill. 2d at 344.

Here, as in *Czarnecki* and *Peile*, "public policy considerations disfavoring forum shopping militate against the disposition of plaintiff's case in Cook County." *Czarnecki*, 339 Ill. App. 3d at 510. Plaintiffs' action proceeded for almost seven years in Will County. Plaintiffs voluntarily dismissed their case in Will County and refiled in Cook County, and the seventh amended complaint they filed in Will County is substantially similar to the complaint they filed in Cook County. Like the plaintiffs in *Czarnecki* and *Peile*, who voluntarily dismissed their cases on the brink of trial, plaintiffs here voluntarily dismissed their case on April 26, 2006, the day after the trial court ordered them to respond to supplemental discovery by May 9, 2006. Significantly, plaintiffs voluntarily dismissed their case after the trial court found that their interrogatory answers were "disingenuous" and that they provided no factual basis in the seven complaints or their discovery responses to establish that the Tilex bottle leaked, had insufficient tamper resistance, or was otherwise defective. We disagree with the trial court's conclusion that *Czarnecki* is distinguishable because it did not involve a products liability claim. While the case may have "evolved" to include a product liability claim against the Clorox defendants relating to the Tilex bottle, it originally was, and does still involve, a premises liability claim.

-12-

1-08-3213

We further find that the private interest factors favor the transfer of plaintiffs' case back to Will County. Plaintiffs are residents of Will County, and Craig slipped and fell in a Will County store. The fact that plaintiffs litigated their initial action and a related medical-malpractice case in Will County for a number of years suggests that Will County is a convenient forum for them. During the seven years that plaintiffs' action proceeded in Will County, "there is no evidence that plaintiff[s] did not consider Will County to be a convenient and appropriate forum." *Czarnecki*, 339 Ill. App. 3d at 511. The Clorox defendants do not have any offices, plants, facilities, or employees in Will County, and Clorox has a manufacturing plant in Chicago. However, Eagle, which was headquartered in Rock Island County, no longer does business in Illinois, since it filed for bankruptcy and has been discharged.

Plaintiffs list dozens of potential witnesses, including former employees of CCL, Clorox, Top Seal, and Novapak, the majority of whom plaintiffs claim reside in either Cook County or outside Illinois. We note that plaintiffs filed their Supreme Court Rule 213 disclosure, which listed a number of these potential witnesses, the same day that they filed their response to the motion to dismiss or transfer. Further, plaintiffs provided an affidavit for only one of these many witnesses. Francisco Lay, a former maintenance mechanic for CCL, stated in an affidavit that he lives in Las Vegas and that if he had to travel to the Chicago area, he would use O'Hare Airport. However, Lay worked for CCL from 1991 to 1994, several years before Craig's 1999 accident. Plaintiffs also attached the transcribed statement of Guillermo Castro, a former building maintenance production mechanic for CCL, who lives in Chicago. Except for apparent Internet searches, no other evidence was presented to support plaintiffs' claims that the Cook County

-13-

witnesses actually live in Cook County.

On the other hand, it is clear that Will County would be more convenient for the five witnesses that defendants identified as having knowledge of the incident or the Tilex bottle: plaintiffs; Snider, the former district manager, who was at the Eagle store the day of the accident; Piontek, an Eagle employee who was also present at the store on the day of the accident; and Nelson, the former store manager. Snider, Piontek, and Nelson provided affidavits stating that they reside in Will County and that it would be inconvenient to travel to Cook County for the trial of this matter.

Plaintiffs also rely on the Cook County medical providers who treated Craig Wagner for his injuries and subsequent medical malpractice. In addition, defendants' expert, Gene Litwin, lives in Buffalo Grove, Illinois; although plaintiffs point out that Buffalo Grove "is in both Cook and Lake Counties," defendants have established that he lives in Lake County. Nevertheless, the location of a plaintiff's treating physician should not be given undue weight. *Bland v. Norfolk & Western Ry. Co.*, 116 Ill. 2d 217, 227 (1987); *Czarnecki*, 339 Ill. App. 3d at 510. Similarly, the location of defense-retained experts "is not relevant in our private interest factor analysis because these witnesses are testifying at defendants' request." *Czarnecki*, 339 Ill. App. 3d at 511.

Plaintiffs maintain that the documentary evidence "overwhelmingly is more accessible in Cook County" because Craig Wagner's union, medical, and pharmacy records are in Cook County. However, "the location of documentary evidence has become less significant because today's technology allows documents to be copied and transported easily and inexpensively." *Ammerman v. Raymond Corp.*, 379 Ill. App. 3d 878, 890 (2008). Similarly, the Tilex bottle in

question, which is in Eagle's attorney's office in DuPage County, is easily movable and accessible.

Defendants contend that a trial in Will County would permit a jury view of the Eagle store where Craig Wagner slipped and fell. It seems unlikely that the jury would need to view the premises, but even if it did, the Eagle store was first converted to a Cub and later to a Strack & Van Til. While defendants dispute that the store configuration has changed, the only evidence that the parties cite on this topic is the affidavit of Mary Wagner. She stated that the current store configuration "does not resemble the configuration on the date of the accident."

Finally, plaintiffs argue that the location of the parties' attorneys--plaintiffs' and Clorox's attorneys are in Chicago--favors retention of the case in Cook County. While a court may consider this factor, "little weight should be accorded it." *Boner v. Peabody Coal Co.*, 142 Ill. 2d 523, 534 (1991).

With respect to the first public interest factor, which concerns having local interests resolved locally, plaintiffs cite this court's holding that where a case involves questions of product liability, the concern of having local interests resolved locally "is of less significance because products liability cases have broader implications." *Ammerman*, 379 Ill. App. 3d at 892. "[W]hile the forum where the injury occurred 'generally has a strong interest in the outcome of litigation, this general rule does not necessarily apply to cases involving complex products liability issues.' " *Woodward*, 368 Ill. App. 3d at 836, citing *Hefner v. Owens-Corning Fiberglas Corp.*, 276 Ill. App. 3d 1099, 1106 (1995). See also *Guerine*, 198 Ill. 2d at 525 (products liability claim less localized); *Brown v. Cottrell, Inc.*, 374 Ill. App. 3d 525, 534 (2007) (a product

liability claim is not "inherently local in flavor"); *Hinshaw v. Coachmen Industries, Inc.*, 319 Ill. App. 3d 269, 278 (2001) (local interest is "largely supplanted by a more general interest in the safety of Dodge vans"). Plaintiffs, however, have alleged not only a product liability claim against Clorox, but also a premises liability claim against Eagle. Furthermore, as defendants note, this case did not evolve "slowly and unexpectedly into a products liability action," since Clorox was named as a defendant in 2001.

Finally, defendants argue that Cook County courts are more congested than Will County courts. Plaintiffs respond that defendants failed to offer any evidence regarding the length of time from case filing to trial. Our supreme court has concluded that the "court congestion factor, by itself, is relatively insignificant." *Dawdy*, 207 Ill. 2d at 181.

We find that the trial court erred in denying defendants' motion to dismiss or transfer where plaintiffs voluntarily dismissed their complaint the day after the court ordered them to respond to interrogatories. Further, the balance of the private and public interest factors strongly favors transfer to Will County. Accordingly, we conclude that the trial court abused its discretion.

### III. CONCLUSION

For the foregoing reasons, we conclude that the trial court abused its discretion in denying defendants' motion to dismiss or transfer.

Reversed and remanded.

QUINN and COLEMAN, JJ., concur.